Michael R. Reese
*mreese@reeserichman.com*
Carl S.M. Hum
*chum@reeserichman.com*
**REESE RICHMAN LLP**
875 Avenue of the Americas, 18th Floor
New York, New York  10001
Telephone: (212) 643-0500
Facsimile:  (212) 253-4272

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAM BERKSON, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>GOGO LLC and GOGO Inc.,<br><br>      Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Adam Berkson ("Plaintiff"), on behalf of himself and all others similarly situated throughout the United States (the "Class," as further defined below), by and through his undersigned attorneys, hereby complains and alleges, upon his personal knowledge and the investigation of his counsel, as follows:

## NATURE OF THE ACTION

1. This is a proposed class action against Gogo LLC and Gogo Inc. (collectively "Gogo" or "Defendants") for misleading consumers about recurring charges for Gogo in-flight Internet service.

2. According to a recent report, thirty-eight percent of domestic flights in the United States, or 8,700 flights, now offer in-flight Internet (Wi-Fi) connectivity for travelers.[1]

3. Gogo dominates that market, providing its in-flight Wi-Fi service on more than eighty percent of all Wi-Fi-enabled flights in North America.

4. Gogo recently had an initial public offering (IPO), in part to fund expansion of its in-flight Wi-Fi service to international flights. According to the New York Times, "the Gogo offering went off against the sobering reality that, so far, only a small number of passengers have been choosing to pay for [in-flight] Wi-Fi."[2]

5. To counteract that "sobering reality," Gogo unfairly and improperly increases Gogo's profits by misleading customers into purchasing a service that automatically charges a customer's credit card or other payment source on a recurring, monthly basis without notice.

---

[1] Joe Sharkey, *In-Flight Wi-Fi Still Costly, but More Available*, N.Y. Times, June 24, 2013, *available at* http://www.nytimes.com/2013/06/25/business/in-flight-wi-fi-still-costly-but-more-available.html; Ben Mutzabaugh, *Routehappy unveils report card for in-flight Wi-Fi*, USA Today, June 25, 2013, *available at* http://www.usatoday.com/story/todayinthesky/2013/06/25/routehappy-unveils-report-card-for-in-flight-wi-fi/2454565/.

[2] Sharkey, *In-Flight Wi-Fi Still Costly, but More Available*.

6. As detailed further below, Gogo presents customer account information on the Gogo website in a misleading manner that does not indicate the recurring charges.

7. On September 25, 2012, Mr. Berkson paid $34.95 to subscribe to Gogo's in-flight Wi-Fi service, based on a representation that he was signing up for the service for one month.

8. Mr. Berkson was charged for just one month in September 2012, but he incurred *an additional $104.85 in monthly charges* for the additional *three months* from October 2012 until December 2012 that he *did not authorize* after he purchased the one-month package in September 2012. The charges to his credit card only stopped after he contacted Gogo to cancel the service, even though he had not authorized a recurring charge to his credit card.

9. Nor had Mr. Berkson received any form of monthly bill or other monthly communication notifying him that he would be charged each month.

10. Mr. Berkson personally contacted Gogo himself and requested a refund for the service for the time periods he was charged and paid for the service but did not use it, but Gogo refused to provide a full refund.

11. According to postings on the Internet, many customers have been duped into purchasing Gogo's service with a recurring charge, and attempts to receive full refunds have been unsuccessful.

12. Mr. Berkson brings this action, on his own behalf and on behalf of a nationwide Class of Gogo customers, to seek redress for Gogo's unfair and unlawful practices described herein.

## THE PARTIES

13.     Plaintiff Adam Berkson is a resident of New York, New York.  As alleged herein, Mr. Berkson incurred monetary damages as a result of Gogo's misleading description of its service charges on a flight out of LaGuardia Airport in New York, New York, on September 25, 2012, and Mr. Berkson was prevented from mitigating the damages in a timely manner as a result of Gogo's misleading description of its charges on Mr. Berkson's account webpage and the fact that Mr. Berkson received no communications from Gogo on a monthly basis notifying him of the recurring charges.

14.     Defendant Gogo LLC, known as Aircell LLC until 2011, is an operating subsidiary of Gogo Inc., a public company.  Gogo LLC is a Delaware company based in Itasca, Illinois, with an additional office in Broomfield, Colorado.  Defendant provides in-flight Internet connectivity and wireless in-cabin digital-entertainment services, as well as voice-communication and video streaming services to travelers on various airlines.  Defendant's business address is 1250 N. Arlington Heights Rd., Itasca, Illinois 60143.

15.     Defendant Gogo Inc. is the parent corporation of Gogo LLC.  Defendant Gogo Inc. is incorporated in Delaware with its headquarters at 1250 N. Arlington Heights Road, Itasca, Itasca, Illinois 60143.  According to its S-1 that Gogo Inc. filed with the Securities and Exchange Commission on December 23, 2011 Gogo Inc. offers "a full suite of in-flight internet connectivity and other voice and data communications products and services…. Gogo is the world's leading provider of in-flight connectivity and a pioneer in wireless in-cabin digital entertainment solutions. Through our proprietary platform and dedicated air-to-ground, or ATG, network, and a variety of in-cabin offerings, we provide turnkey solutions that make it easy and convenient for passengers to extend their connected lifestyles to the aircraft cabin…. We provide

Gogo Connectivity to passengers on nine of the ten North American airlines that provide internet connectivity to their passengers."

## JURISDICTION AND VENUE

16. This Court has jurisdiction over the subject matter of this action by virtue of diversity of citizenship because Plaintiff is a citizen of New York and Defendants are citizens of Illinois. Additionally, pursuant to the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat. 4 (Feb. 18, 2005) ("CAFA"), under 28 U.S.C. § 1332(d)(2), this Court has jurisdiction over all class actions where "any member of a class of plaintiffs is a citizen of a state different from any defendant and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs." Because the proposed Class Plaintiff seeks to represent includes residents from all fifty states, the Class necessarily includes citizens from states other than the states of which Defendants are citizens.

17. This Court has personal jurisdiction over Defendants because the Defendants regularly conducts business in New York, has sufficient minimum contacts with New York, and otherwise intentionally avail themselves of the laws and markets of New York through the promotion, sale, marketing, and distribution of Gogo products and services in New York. Further, Plaintiff's claims arise out of Defendants' conduct within New York, since the September 25, 2012, flight during which the initial transaction at issue occurred originated at LaGuardia Airport in New York, New York.

18. Venue is proper in this District by virtue of 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District, since the September 25, 2012, flight during which the initial transaction at issue occurred originated at LaGuardia Airport in New York, New York.

*Berkson et al. v. Gogo LLC*
CLASS ACTION COMPLAINT

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

19. On September 25, 2012, Plaintiff purchased in-flight Internet service from Gogo for $34.95 in reliance on the representations on Gogo's registration website that he would be charged $34.95 for one month of service.

20. The service could be used for up to 30 days on any airline. After the 30 days ended on October 25, 2012, Gogo continued to bill Plaintiff's credit card $34.95 every month until at least December 25, 2012, even though Plaintiff did not use the service. Gogo obtained no signature or affirmative authorization to charge for recurring fees. Nor did Gogo send any form of communication to Plaintiff on a monthly basis, as is customary with monthly bills, to notify him of the pending charges that he would incur if he did not cancel his service.

21. Similarly, every other Class member purchased in-flight Internet service from Gogo prior to December 31, 2012, using a registration website that had representations about the monthly cost of the service but had no representations about the recurring nature of charges for the service.

22. Defendants' website currently indicates that the charge for "monthly" service will be recurring, but it did not do so in 2011 or 2012. Rather, when potential customers registered for the service, the only representation regarding the price indicated the price per month—*e.g.*, "$34.95 per month."

23. In contrast to the prominent representations on Gogo's registration website regarding the price for the service, Defendants' representations omitted reference to the recurring nature of the charges.

24. Nor did Plaintiff or the other Class members have to affirmatively indicate approval for Gogo to charge recurring charges—for example, by "checking a box" indicating their understanding that they would be charged every month until they cancelled the service.

25. In sum, Plaintiff and other Class members did not receive notice of the recurring nature of the charges when registering for Gogo's service.

### Gogo Harmed Plaintiff in a Manner Identical to the Manner in which Gogo Harmed the Class

26. Plaintiff is in the same Class as all other customers of Gogo during the relevant time period. Plaintiff inadvertently enrolled in a plan that recurrently charged his credit card without any authorization or proper disclosure. Plaintiff was never informed nor was he reimbursed for all of the recurring charges.

27. Plaintiff incurred charges for a service he did not use, nor would have used for each month he was charged for the service. Plaintiff would never have incurred these charges if Defendants had notified him of the payment scheme and requested authorization to continuously bill his credit card.

### Gogo Benefits Greatly from the Undisclosed and Unauthorized Charges

28. Gogo possesses a strong ulterior motive to charge its customers' credit and debit cards on a recurring basis because, upon information and belief, it generates thousands, if not millions, of dollars in revenue for services that are not used.

29. Because Gogo's customers may get charged indefinitely for their services, and because Gogo does not offer full refunds to those who notice the fraudulent billing in time, the injury is substantial.

**CLASS ACTION ALLEGATIONS**

30. Plaintiff brings this action on behalf of himself and a proposed class (the "Class") consisting of all others similarly situated, defined as follows:

> All persons residing in the United States who, at any time between February 25, 2008, and December 31, 2012 (the "Class Period"), incurred monthly fees for Gogo in-flight Internet service for months that the customers did not use the service. Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, any officers or directors of Defendants, and the legal representatives, heirs, successors, and assigns of Defendants.

31. Plaintiff also brings this action on behalf of a proposed subclass (the "New York Sub-Class") consisting of all other similarly situated New York residents, defined as follows:

> All New York residents who, at any time between January 30, 2008, and December 31, 2012, incurred monthly fees for Gogo in-flight Internet service for months that the customers did not use the service. Excluded from the New York Sub-Class are Defendants, any entity in which Defendants have a controlling interest, any officers or directors of Defendants, and the legal representatives, heirs, successors, and assigns of Defendants.

32. Plaintiff brings this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

33. <u>Numerosity of the Class; Fed. R. Civ. P. 23(a)(1)</u>: The size of the Class is so large that joinder of all Class members is impracticable. Class members number in the thousands. The precise number of Class members and their addresses are unknown to Plaintiff but can be obtained from Defendants' records. Class members can be notified of the pendency of this action by mail, supplemented by published notice if necessary.

34. <u>Existence and Predominance of Common Questions of Fact and Law; Fed. R. Civ. P. 23(a)(2), (b)(3)</u>: There are questions of law and fact common to the Class. These questions predominate over any questions affecting only individual Class members. These common legal and factual questions include but are not limited to:

    a. whether Defendants' practices described herein constituted deceptive acts and practices in violation of New York General Business Law section 349;

    b. whether Defendants' practices described herein breached the implied covenant of good faith and fair dealing;

    c. whether Defendants were unjustly enriched by the conduct described herein; and

    d. whether Defendants properly disclosed that monthly charges would be recurring for the Gogo in-flight Internet service.

35. <u>Typicality; Fed. R. Civ. P. 23(a)(3)</u>: Plaintiff's claims are typical of the Class because Plaintiff's credit card had been charged without his knowledge or prior authorization for an ongoing, recurring service of which he did not avail himself.

36. <u>Adequacy; Fed. R. Civ. P. 23(a)(4)</u>: Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendants on behalf of himself and all other Class members. Plaintiff has selected counsel that is experienced in litigating class actions. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

37. <u>Superiority; Fed. R. Civ. P. 23(b)(3)</u>: The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for the reasons articulated below:

    a. The damages suffered by individual Class members are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendants' conduct.

    b. Further, it would be virtually impossible for the Class members individually to redress effectively the wrongs done to them. Even if Class members themselves could afford such individual litigation, the court system could not. Individualized litigation would unnecessarily increase the delay and expense to all parties and to the court system and presents a potential for inconsistent or contradictory rulings and judgments. By contrast, the class action device presents far fewer management difficulties, allows the hearing of claims which might otherwise go unaddressed because of the relative expense of bringing individual lawsuits, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

    c. The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants.

    d. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or would substantively impair or impede their ability to protect their interests.

38. **Notice** – Plaintiff and his counsel anticipate that notice to the proposed Class will be effectuated through direct notice via both electronic mail and U.S. mail.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**(Violation of New York General Business Law § 349)**
**(On Behalf of the New York Sub-Class)**

39. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

40. Plaintiff brings this cause of action on behalf of himself and the New York Sub-Class, pursuant to New York General Business Law section 349.

41. As detailed more fully herein, Defendants engaged in deceptive acts and practices by falsely and misleadingly making representations to consumers, and by engaging in omissions, that were material to all reasonable consumers who accessed, or contemplated accessing, Gogo's in-flight Internet service. These and similar misrepresentations were broadly disseminated to all members of the New York Sub-Class in substantially the same form via Gogo's website and other advertising and marketing materials.

42. As fully alleged above, by advertising, marketing, distributing, and/or selling the Products to Plaintiff and the other members of the New York Sub-Class, Defendants engaged in and continues to engage in deceptive acts, practices, and omissions.

43. By reason of the foregoing, Defendants' conduct, as alleged herein, constitutes deceptive acts and practices in violation of New York General Business Law section 349, and Defendants are liable to Plaintiff and the other members of the New York Sub-Class for the actual damages that they have suffered as a result of Defendants' actions. The amount of such damages is to be determined at trial, but will not be less than $50.00.

44. Therefore, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)
### (On Behalf of the Class)

45. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

46. Implicit within any agreement that Plaintiff and the other Class members may have entered into with respect to the service described herein is a covenant by Defendants to act in good faith and deal fairly with Plaintiff and the other Class members.

47. Defendants breached this implied covenant of good faith and fair dealing by intentionally, knowingly, willfully, unreasonably, recklessly, arbitrarily, frivolously, and/or maliciously:

   a. promoting Gogo's in-flight Internet service but omitting the payment scheme from the materials available to customers at the time of initial purchase;

   b. refusing to offer full refunds to customers who were charged on a recurring basis without their authorization; and

   c. for such other conduct to be disclosed in discovery.

48. As a result of Defendants' conduct as described herein, Plaintiff and the other Class members have suffered loss and damage.

49. Therefore, Plaintiff prays for relief as set forth below.

## THIRD CAUSE OF ACTION

**(Violation of Various Consumer Protection Acts)**
**(On Behalf of the Class)**

50.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged.

51.     Plaintiff brings his statutory fraud claims pursuant to the substantially similar Consumer Fraud Acts[3] of all United States, all of which were enacted and designed to protect consumers against unlawful, fraudulent, and/or unfair business acts and practices. *See, e.g.*, Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.* (the "Illinois Consumer Fraud Act").

---

[3] The following consumer protection acts are modeled after the Federal Trade Commission's consumer protection provisions and are collectively referred to herein, along with Illinois' and New York's consumer protection statutes, as the "Consumer Fraud Acts": Ala. Code § 8-19-1 *et seq.* (Alabama); Alaska Stat. § 45.50.471 *et seq.* (Alaska); Ariz. Rev. Stat. Ann. § 44-1521 *et seq.* (Arizona); Ark. Code Ann. § 4-88-101 *et seq.* (Arkansas); Colo. Rev. Stat. § 6-1-105 *et seq.* (Colorado); Conn. Gen. Stat. § 42-110a (Connecticut); Del. Code Ann. Tit. 6, § 2511 *et seq.* (Delaware); D.C. Code Ann. § 28-3901 *et seq.* (District of Columbia); Fla. Stat. Ann, § 501.201 *et seq.* (Florida); Ga. Code Ann. § 10-1-390 *et seq.* (Georgia); Haw. Rev. Stat. § 481A-1 *et seq.* and Haw. Rev. Stat. § 480-1 *et seq.* (Hawaii); Idaho Code § 48-601 *et seq.* (Idaho); Kan. Stat. Ann § 50.623 *et seq.* (Kansas); Ky. Rev. Stat. § 367.11.0 *et seq.* (Kentucky); La. Rev. Stat. Ann. § 51:1401 *et seq.* (Louisiana); Me. Rev. Stat. Ann. Tit. 5, § 205-A *et seq.* (Maine); Md. Com. Law Code Ann. § 13-101 *et seq.*, Md. Corn. Law Code Ann. § 13-301 *et seq.*, Md. Corn Law Code Ann, § 13-408 *et seq.* (Maryland); Mass Gen. L. ch. 93A (Massachusetts); Mich. Stat. Ann. § 445.901 *et seq.*, Mich. Stat. Ann. § 19.418(1) *et seq.* (Michigan); Minn. Stat. § 325F.68 *et seq.*, Minn. Stat. § 8.31 (Minnesota); Miss. Code Ann. § 75-24-3 *et seq.* (Mississippi); Mo. Rev. Stat. § 407.010 *et seq.* (Missouri); Mont. Code Ann. § 30- 14-101 *et seq.* (Montana); Neb. Rev. Stat.§ 59-1601 *et seq.* (Nebraska); Nev. Rev. Stat. § 41.600 and Nev. Rev. Stat. § 598.0903 *et seq.* (Nevada); N.H. Rev. Stat. Ann. § 358:1 *et seq.* (New Hampshire); N.J. Rev. Stat. § 56:8-1 *et seq.*, N.J. Rev. Stat. § 56:12-1 *et seq.* (New Jersey); N.M. Stat. Ann. § 57-1.2-1 *et seq.* (New Mexico); N.Y. Gen. Bus. Law. § 349 *et seq.* (New York); N.C. Gen. Stat. § 75-1 *et seq.* (North Carolina); N. D. Cent. Code § 51-15-01 *et seq.* (North Dakota); Ohio Rev. Code Ann. § 1345.01 *et seq.* (Ohio); Okla. Stat. Tit. 15, § 751 *et seq.* (Oklahoma); Ore. Rev. Stat. § 646.605 *et seq.* (Oregon); Penn. Stat. § 201-1 *et seq.* (Pennsylvania); Laws of P. R. Ann. Tit. 10, § 259 *et seq.* (Puerto Rico); R.I. Gen. Laws § 6-13.1:1 *et seq.* (Rhode Island); S.C. Code Ann. 39-5-10 *et seq.* (South Carolina); S.D. Codified Laws Ann. 37-24.1 *et seq.* (South Dakota); Tenn. Code Ann. § 47-18-101 *et seq.* (Tennessee); Tex. Bus. & Comm. Code Ann. § 17.41 *et seq.* (Texas); Vt. Stat. Ann. Tit. 9, § 2451 *et seq.* (Vermont); Va. Code Ann. § 59.1-196 *et seq.* (Virginia); Wash. Rev. Code § 19.86.010 *et seq.* (Washington); W.Va. Code § 46A-6-101 *et seq.* (West Virginia); and Wyo. Stat. § 40;12-101 *et seq.* (Wyoming).

52. Section 2 of the Illinois Consumer Fraud Act provides, in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of or employment of any deceptive, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use of employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby,  In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

815 Ill. Comp. Stat. 505/2 (footnotes omitted).

53. Plaintiff and the other members of the Class have standing to assert claims under the Consumer Fraud Acts because they are consumers within the meaning of the Consumer Fraud Acts and Defendants' practices were addressed to the market generally and otherwise implicate consumer protection concerns. At all relevant times, Defendants conducted "trade and commerce" within the meaning of the Consumer Fraud Acts. *See, e.g.*, 815 Ill. Comp. Stat. 505/1(f).

54. Defendants have committed unlawful, fraudulent, and/or unfair business acts and practices by engaging in the acts and practices alleged herein including, but not limited to, failing to disclose that they would charge consumers for its in-flight Internet service on a monthly basis until cancellation.

55. Defendants intended that Plaintiff and the other Class members would rely on the unlawful, fraudulent, and/or unfair business acts and practices alleged herein so that they would purchase Gogo's in-flight Internet service.

14

56. Defendants' actions, which were willful and wanton, constitute intentional violations of the Consumer Fraud Acts.

57. Defendants' unlawful, fraudulent, and/or unfair business acts and practices described herein are continuing in nature and are widespread practices.  Plaintiff and the other members of the Class have been damaged as a proximate result of Defendants' course of conduct and its violations of the Consumer Fraud Acts because they paid for a service that they did not intend to pay for and did not use, and the fees they were charged for that service were not properly disclosed.

58. Plaintiff and the Class members respectfully request an award of all compensable damages, and attorneys' fees, costs, and expenses to be assessed against Defendants, within the limits set forth by applicable law.

59. Therefore, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

**(Restitution / Unjust Enrichment)**
**(On Behalf of the Class)**
**(In the Alternative)**

60. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

61. Plaintiff brings this cause of action in the alternative to his First, Second, and Third Causes of Action, on behalf of himself and the Class members.

62. By selling its in-flight Internet service through unfair and deceptive practices, Defendants have engaged in inequitable conduct and has received a benefit at the expense of consumers, including Plaintiff and the other Class members.

63. At the time of their purchase of the Gogo service, Plaintiff and the other Class members conferred a benefit—*i.e.*, money and substantial revenue—on Defendants.

64. For the reasons described herein, the profits and/or benefits obtained by Gogo through sales of its in-flight Internet service are to the determent of Plaintiff and the other Class members and violate the fundamental principles of justice, equity, and good conscience.

65. Such benefits constitute unjust enrichment for Defendants, and it would be inequitable under the circumstances for it to retain the benefits received.

66. Therefore, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on his own behalf and on behalf of the Class, prays for relief as set forth below:

A. for an Order certifying the Class and the New York Sub-Class under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) and appointing Plaintiff and his counsel to represent the Class and the New York Sub-Class;

B. for an Order awarding Plaintiff and the other Class members actual and compensatory damages in an amount that will be proven at trial;

C. for an Order awarding Plaintiff and the Class restitution and/or disgorgement and other equitable relief as the Court deems proper;

D. for an Order awarding Plaintiff and the Class punitive damages as to the appropriate cause;

E. for an Order awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all claims set forth above that are so triable.

Dated: February 25, 2014

Respectfully submitted,

*/s/ Michael R. Reese*
Michael R. Reese
*mreese@reeserichman.com*
Carl S.M. Hum
*chum@reeserichman.com*
**REESE RICHMAN LLP**
875 Avenue of the Americas, 18th Floor
New York, New York  10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiff Berkson
and the Proposed Class*