Michael R. Reese
*mreese@reeserichman.com*
Kim E. Richman
*krichman@reeserichman.com*
George V. Granade
*ggranade@reeserichman.com*
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York  10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADAM BERKSON *et al.*, individually and on behalf of all others similarly situated,<br><br>                                 Plaintiffs,<br><br>        v.<br><br>GOGO LLC and GOGO INC.,<br><br>                                 Defendants. | Case No. 1:14-cv-01199-JBW-LB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION, TRANSFER VENUE OR, IN THE ALTERNATIVE, TO DISMISS THE AMENDED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)** |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES .......................................................................................... iv

INTRODUCTION ............................................................................................................1

STATEMENT OF FACTS ...............................................................................................5

    Plaintiff Adam Berkson .............................................................................................6

    Plaintiff Kerry Welsh .................................................................................................7

ARGUMENT ...................................................................................................................7

I.     THE COURT SHOULD DENY DEFENDANTS' MOTION TO
       COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS ...................................7

      A.    The Parties Never Agreed to Arbitrate ....................................................7

      B.    The Arbitration Clauses Are Unenforceable Because They Are
           Unconscionable .......................................................................................12

           1.    The arbitration clauses are procedurally unconscionable .............13

           2.    The arbitration clauses are substantively unconscionable .............14

II.    THE COURT SHOULD NOT TRANSFER THE CASE TO ANOTHER
       VENUE .................................................................................................17

      A.    Gogo's Motion to Transfer under 28 U.S.C. § 1404(a) Is
           Premature, and the Court Should Deny It to Allow for Discovery
           on the Issue .............................................................................................17

      B.    Even If the Court Were to Address the Motion to Transfer Now
           (Which It Should Not), It Should Not Transfer Plaintiffs' Action to
           Another Court .........................................................................................18

           1.    Gogo presumes applicability of the wrong law .............................19

           2.    The forum selection clauses are unenforceable .............................20

                (i)    Plaintiffs did not specifically agree to any forum
                      selection clause in connection with their purchases
                      at issue .........................................................................21

(ii)    By their plain language, none of the forum selection clauses Gogo submitted with its Motion applies to Plaintiffs' action ...............................................................21

(iii)    The forum selection clauses are unconscionable ..............23

3.    Even applying *Bremen*, the forum selection clause is invalid .............................................................................24

4.    The Court should retain jurisdiction of Plaintiffs' action under 28 U.S.C. § 1404 .............................................................25

III.    PLAINTIFFS HAVE STANDING TO PURSUE THE CLASS CLAIMS ASSERTED IN THE COMPLAINT ..........................................................27

A.    Factual and Procedural Background ..........................................27

B.    Defendants Have Failed to Carry Their Burden to Demonstrate That Their Payment Moots Plaintiffs' Action .............................29

C.    The Payments to the Plaintiffs Do Not Completely Cover Their Claims ......................................................................................29

D.    Defendants' Conduct Also Runs Afoul of Rule 23 and Does Not Extinguish Standing ..................................................................30

E.    Defendants' Conduct Runs Afoul of the Consumers Legal Remedies Act ..........................................................................31

IV.    PLAINTIFFS HAVE STATED A CLAIM WITH RESPECT TO EACH OF THEIR CAUSES OF ACTION ........................................................33

A.    Plaintiffs Have Properly Pled Unjust Enrichment ....................33

B.    Plaintiffs Have Successfully Pled Breach of the Implied Covenant of Good Faith and Fair Dealing ................................................34

C.    Mr. Berkson Has Successfully Pled a Claim for Violation of New York General Business Law Section 349 ..................................36

D.    Defendants' Arguments in Favor of Dismissal of Plaintiffs' Claims Against Gogo Inc. Are Meritless ...............................................39

CONCLUSION.................................................................................................40

CERTIFICATE OF SERVICE .......................................................................41

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG),

    2010 WL 2925955, at \*16 (E.D.N.Y. July 21, 2010) ................................................ 37

*Armendariz v. Found. Health Psychcare Serv., Inc.*, 24 Cal. 4th 83 (Cal. 2000) ................... 14, 15

*AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986) ........... 8

*Atlantic Marine Construction Co. v. United States District Court for the*

    *Western District of Texas*, 134 S. Ct. 568 (2013) ............................................. 18, 19

*BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198 (2014) ................................. 8

*Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 F. App'x 4 (2d Cir. 2012) ............ 8

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) ....................... 17

*Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011) ..................................... 23

*Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681 (1996) ..................................... 12

*EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342,

    348 (E.D.N.Y. 2012) ......................................................................... 18, 25

*Edme v. Internet Brands, Inc.*, 968 F. Supp. 2d 519, 525 (E.D.N.Y. 2013) ..................... 21

*E-Z Cash Advance, Inc. v. Harris*, 60 S.W. 3d 436, 441 (Ark. 2001) .......................... 15

*Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 785 (9th Cir. 2002) ............... 15

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*,

    No. 13-CV-3073 NSR, 2014 WL 1285137, at \*8–9 (S.D.N.Y. Mar. 27, 2014) .................... 38

*Hines v. Overstock.com, Inc.*, 380 Fed. App'x 22 (2d Cir. 2010) ............................. 10

*Hojnowski v. Buffalo Bills, Inc.*, No. 13-CV-388S,

    2014 WL 408717 (W.D.N.Y. Feb. 3, 2014) .................................................... 13, 23

iv

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 169–71 (5th Cir. 2004) .... 15

*Independence Cnty. V. City of Clarksville*, 386 S.W.3d 395, 399–400 (Ark. 2012) ................... 15

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) ................................. 15

*Iwen v. U.S. W. Direct, a Div. of U.S. W. Mktg. Res. Grp., Inc.*,

    293 Mont. 512, 521–22 (Mont. 1999) ................................................... 15

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) ............................... 8

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ......................... 18, 19, 20, 24

*Macias v. Excel Bldg. Serv., LLC*, 767 F. Supp. 2d 1002, 1009–10 (N.D. Cal. 2011) ................ 16

*Martinez v. Bloomberg LP*, 740 F.3d 211, 220–21 (2d Cir. 2014) ....................... 20, 24

*Merkin v. Vonage Am. Inc.*, No. 2:13-CV-08026-CAS,

    2014 WL 457942 (C.D. Cal. Feb. 3, 2014) ............................... 14, 16, 17

*Metro. Prop. & Cas. Ins. Co. v. Budd Morgan Cent. Station Alarm Co.*,

    95 F. Supp. 2d 118 (E.D.N.Y. 2000) ................................... 13, 15

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,

    599 F.3d 102, 112 (2d Cir. 2010) .................................... 17, 18

*NML Capital v. Republic of Argentina*, 621 F.3d 230 (2d Cir. 2010) ......................... 12

*Palm Beach Motor Cars Ltd. v. Jeffries*, 885 So.2d 990, 992 (Fla. Dist. Ct. App. 2004) ........... 15

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S. Ct. 252, 266, 70 L. Ed. 2d 419 (1981) .. 25

*Plumitallo v. Hudson Atl. Land Co., LLC*, 74 A.D.3d 1038, 1039,

    903 N.Y.S.2d 127, 128 (2010) ................................... 33

*Rapoport v. Asia Electronics Holding Co., Inc.*, 88 F. Supp. 2d 179 (S.D.N.Y. 2000) .............. 38

*Red Bull Assoc. v. Best W. Int'l, Inc.*, 862 F.2d 963 (2d Cir. 1988) ............................ 19

*Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010) .................................. 12

*Rivera v. Am. Gen. Fin. Serv., Inc.*, 259 P.3d 803, 819 (N.M. 2011) ........................................... 16

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012) ................................................... passim

*Steele v. Am. Mortgage Mgmt. Servs.*, No. 2:12-CV-00085 WBS,

    2012 WL 5349511 (E.D. Cal. Oct. 26, 2012) ........................................................... 16

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ............................................. 17, 19, 20, 24

*Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1068–70 (11th Cir. 1987) ............................ 20

*Stewart v. Gogo, Inc.*, No. C-12-5164 EMC, 2014 WL 324570 (N.D. Cal. Jan. 29, 2014) ......... 13

*Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 195 (3d Cir. 2011) ................................. 31

*Taylor v. Butler*, 142 S.W.3d 277, 286 (Tenn. 2004) ................................................. 15

*Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641–42 (1981) .............................. 24

*Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009) .................................................... 3, 12

*TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31 (2d Cir. 2011) ................................... 3, 12

*TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 478 (2d Cir. 2011) ................................. 19

*U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 64 (2d Cir. 2004) ................... 34

*Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964) ....................................................... 17

*Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*,

    489 U.S. 468 (1989) .......................................................................... 8

*Wachovia Bank, Nat. Ass'n v. Schmidt*, 445 F.3d 762 (4th Cir. 2006) ................................... 3, 12

*Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992) ............ 19

*Whitney Lane Holdings, LLC v. Sgambettera & Associates, P.C.*,

    No. 08-cv-2966 JS, 2010 WL 4259797, at *3 (E.D.N.Y. Sept. 8, 2010) ................................. 27

*Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ......................................... 37

*Wis. Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 172–74 (Wis. 2006) .............................. 15

*Woolcott v. Baratta*, No. 13-CV-2964 JS GRB,

    2014 WL 1814130, at *3 (E.D.N.Y. May 7, 2014) ................................................................ 38

**Statutes and Other Authorities**

28 U.S.C. § 1404 ................................................................................................................ passim

California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* .......................... 5, 28

California's False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.* .............................. 22

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ...................................................................... 1, 7, 8

Federal Civil Procedure Rule 23 ............................................................................................. 5

Federal Rule of Civil Procedure 12 ......................................................................................... 13

Federal Rule of Civil Procedure 23 ..................................................................................... 28, 30

Federal Rule of Civil Procedure 26 ......................................................................................... 1

Gogo Inc., Annual Report (Form 10-K), at 54 (Mar. 14, 2014), *available at*
    http://www.sec.gov/Archives/edgar/data/1537054/000119312514100126/d659569d10k.htm 14

*Hugh's Concrete & Masonry Co. v. Se. Pers. Leasing, Inc.*, No. 8:12-CV-2631-T-17AEP, 2013
    WL 5798638, at *5 (M.D. Fla. Oct. 28, 2013) ................................................................. 29, 30

Plaintiffs Adam Berkson and Kerry Welsh (collectively, "Plaintiffs") respectfully submit the following in opposition to the motion defendants Gogo LLC and Gogo Inc. (together, "Gogo" or "Defendants") filed to compel arbitration, to transfer the action to the United States District Court for the Northern District of Illinois, or to dismiss the action for lack of standing and/or for failure to state a claim upon which relief can be granted (Doc. No. 25 (the "Motion" or "Def. Mem.")).  For the reasons below, the Court should deny Defendants' Motion in its entirety.

## INTRODUCTION

This action presents a classic bait-and-switch consumer deception scheme, whereby Defendants profited tremendously from their ability to mislead consumers.  Instead of addressing the alleged misconduct, however, Defendants attempt to engage in another bait and switch, falsely claiming that the Plaintiffs agreed to give up their right to have this matter heard before a court of law as a class action.  (Def. Mem. at 7–12.)  Defendants are wrong.

As a threshold matter, Defendants make a number of evidentiary assertions in their brief (which Plaintiffs believe are incorrect), relying upon declarations of two factual witnesses submitted with their Motion and upon documents reviewed by these witnesses.  (Def. Mem. at 7– 12.)  Plaintiffs have requested a deposition of Defendants to test their factual assertions, but they have refused to comply, and Plaintiffs have requested a Rule 26(f) conference.  (Declaration of George Granade ("Granade Decl."), at ¶¶ 5–9 (filed concurrently herewith).)  Plaintiffs request that the Court defer this Motion until Plaintiffs have had an opportunity to receive discovery.

Furthermore, Plaintiffs demand a trial by jury pursuant to 9 U.S.C. § 4 to resolve all disputed facts relating to whether Plaintiffs ever formed an agreement with Defendants to arbitrate the claims they assert in their Amended Complaint.  (Plaintiffs' Demand for a Jury Trial Pursuant to 9 U.S.C. § 4 (filed concurrently herewith).)

Nonetheless, even if the Court were to determine Defendants' arguments now, without allowing Plaintiffs the opportunity to conduct discovery concerning the factual matters Defendants have submitted, Defendants' arguments fail.   Indeed, governing Second Circuit authority mandates that Defendants' arguments be rejected.  *Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012).

First, when Plaintiffs entered into the transactions at issue, no arbitration provision existed in Gogo's Terms of Use.  Rather, Defendants only included arbitration provisions in versions of their Terms of Use that were associated with transactions that took place long after Plaintiffs' transactions at issue.

Second, the various arbitration clauses Gogo submitted do not apply retroactively, and it would violate basic contract principles to hold otherwise.  This is underscored by the plain language of the arbitration clauses themselves, which allows for a consumer to opt out of the arbitration agreement within 30 days after the transaction occurred.   (Declaration of Dennis Sladky ("Sladky Decl."), Ex. 3, Doc. No. 23-3, at 8 (Terms of Use in effect on or about December 13, 2012, according to Dennis Sladky); *id.*, Ex. 4, Doc. No. 23-4, at 8 (Terms of Use in effect on or about May 20, 2013, according to Dennis Sladky).)   This shows that the arbitration clause only applies to transactions that occurred while the arbitration clause was in existence, as it would be illogical (absent the ability to time travel, which does not exist) to say that a 30-day opt-out period applies, retroactively, to transactions that occurred more than 30 days (or 60 days, 90 days, or even a year) prior to the existence of the arbitration clause.

Third, and relatedly, the claims here do not fall within the scope of the arbitration clauses. The December 13, 2012, arbitration clause applies to "any and all disputes and claims . . . that relate in any way to or arise out of the Site, the Service or ***these Terms and Conditions***[.]"

(Sladky Decl., Ex. 3, at 7 (emphasis added).)  Similarly, the May 20, 2013, arbitration clause Gogo submitted applies to "any and all disputes and claims . . . that relate in any way to or arise out of the Site, the Domain, the Service or ***this Agreement***[.]  (*Id.*, Ex. 4, at 8 (emphasis added).) The December 2012 versions of the "Site" and the "Service" did not exist in August 2011 or September 2012; nor did the May 2013 "Site", "Domain", and "Service" exist in August 2011 or September 2012.[1]  Similarly, in August 2011 and September 2012, the December 2012 "Terms and Conditions" and the May 2013 "Agreement" did not exist, either.  *See TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 34 (2d Cir. 2011) ("Courts construing arbitration clauses have refused to subject claims to arbitration where the claims arise from or relate to conduct occurring prior to the effective date of the agreement, *and* where the clause is limited to claims under '*this* Agreement.'" (emphasis in original)); *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1119 (11th Cir. 2009) ("In contract interpretation, we can glean intent not only from what is said but what is not said.  The New Agreement, which was quite thorough, notably did *not* specify that 'disputes arising out of or in connection with this *or any previous* Agreement, including . . .  Seafarer's service on this vessel shall be referred to, and finally resolved by arbitration.'  ***We think if the parties had intended retroactivity, they would have explicitly said so***." (initial emphasis original, final emphasis added)).[2]  For this reason alone, the Court should refuse to compel arbitration.

Fourth, even if the arbitration clauses applied retroactively (which they do not), the arbitration clauses are procedurally and substantively unconscionable.  This is so because, *inter*

---

[1] While a domain called "gogoair.com" technically did exist in August 2011 and September 2012, Gogo's website (*i.e.*, the content of the domain, which is the material element here) on those dates was not the same as its website in either December 2012 or May 2013.

[2] *See also Wachovia Bank, Nat. Ass'n v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006) ("Moreover, the events giving rise to these claims occurred before the [arbitration clause] was even executed. In these circumstances, the [defendants'] state-court claims are not significantly related to the [arbitration clause].").

*alia*, they are completely one-sided in favor of Defendants, forcing consumers into arbitration of covered disputes, while at the same time reserving for Defendants the right to sue consumers in a court of law on numerous enumerated claims that Defendants selected.   Numerous courts have held that such one-sided "contracts" are unconscionable and unenforceable.

Finally, as seen in their declarations (filed concurrently herewith), Plaintiffs never saw nor read or otherwise agreed to any arbitration clause in connection with the August 2011 and September 25, 2012, transactions at issue, and, therefore, cannot be bound by any such clause.

Defendants alternatively move to transfer this matter to the United States District Court for the Northern District of Illinois under so-called "forum selection clauses."  (Def. Mem. at 12–15.)   That argument also fails.   First, Defendants have not carried their burden to show that Plaintiffs agreed to any forum selection clause.   Defendants have offered no credible evidence that Plaintiffs ever agreed to a forum selection clause: Defendants fail to explain the sign-up process for their in-flight Internet service, fail to provide, for example, screen shots of the sign-up process (from any time period) showing where they apprised Plaintiffs of any forum selection clause, and otherwise fail to show where and when—if ever—they presented Plaintiffs with any forum selection clause.

Moreover, under the very terms of the Terms of Use itself, the forum selection clause (as well as other terms in the Terms of Use) does not apply if the consumer discontinues use of his or her service or terminates his or her account.  (Sladky Decl., Ex., Doc. No. 23-3, at 3.)  That is precisely what happened here with respect to Plaintiff Welsh.  (Declaration of Steve Vair, Doc. No. 22, at ¶ 9 ("Gogo's records indicate that Mr. Welsh called to cancel his monthly service subscription in February of 2013, and Gogo complied.").

Recognizing that its motion to compel arbitration or transfer was likely to fail,

Defendants claim that Plaintiffs lack standing because their claims have been completely satisfied.  (Def. Mem. at 15–18.)  This not only mistakes the facts of this matter, it omits the material fact that Defendants made payment to Kerry Welsh of approximately $500.00 after he had to hire the undersigned counsel, who sent a pre-suit demand letter pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* (the "CLRA") to Defendants on July 24, 2013, on his behalf and that of a class of similarly situated consumers.  (*See* Granade Decl., Ex. 1.)  Knowing that Mr. Welsh was represented by counsel, Defendants did not contact Mr. Welsh's counsel, but instead Defendants (apparently at the behest of their outside counsel, which raises serious ethical concerns) made payment to Mr. Welsh of approximately $500.00.  This violates the spirit and the letter of both Federal Civil Procedure Rule 23 and the CLRA, which protects consumer classes.  Accordingly, as numerous courts have done before in the context of a class action, this Court should reject such an unseemly pick-off move.

Additionally, this Court need not even delve into whether the pick-off conduct described immediately above was improper or unethical, as the payments made to both the Plaintiffs fail to cover their claims completely and fully.  In similar situations, courts have held that the failure to provide complete relief for the claims asserted defeats a defendant's "no standing" argument, such as that Defendants make here.

Defendants' remaining arguments fail for similar reasons.

For the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendants' Motion in its entirety.

## **STATEMENT OF FACTS**

Plaintiffs Adam Berkson and Kerry Welsh allege Gogo makes representations on its website that mislead its customers into purchasing an in-flight Internet service (*e.g.*, "$34.95 per

month") that automatically charges a customer's credit card or other payment source on a recurring, monthly basis, without providing notice of the recurring nature of the charges.  (¶¶ 5, 21, 23–25.[3])  The Internet service could be used for up to 30 days on any airline.  (¶ 22.)  After the 30 days ended, Gogo continued to bill each of its customers' credit cards every month, even if they did not use the service.  (¶¶ 22, 28–29.)  Gogo obtained no signature or affirmative authorization to charge for recurring fees.  (¶¶ 22, 26.)  Further, Gogo presents customer account information on its website in a misleading manner that does not indicate the recurring charges (¶ 6), and Gogo does not provide customers with any form of monthly bill or other monthly communication notifying them they will be charged each month (¶¶ 9, 22, 28–29).

### Plaintiff Adam Berkson

Plaintiff Adam Berkson is a resident of New York, New York.  (¶ 14.)  On September 25, 2012, on a flight out of LaGuardia Airport in New York, New York, Mr. Berkson paid $34.95 to subscribe to Gogo's in-flight Wi-Fi service, based on Gogo's representation that he was signing up for service for one month.  (¶¶ 7, 14.)  However, while Gogo charged Mr. Berkson for just one month in September 2012, it charged him an additional $104.85 in monthly charges for an additional three months from October 2012 until December 2012 that Mr. Berkson did not authorize.  (¶ 8.)  The charges to his credit card only stopped after he contacted Gogo to cancel the service.  (*Id.*)  Nor had Mr. Berkson received any form of monthly bill or other monthly communication notifying him that he would be charged each month.  (¶ 9.)

Furthermore, on September 25, 2012, Mr. Berkson never saw, and never agreed to, the arbitration provisions shown in Exhibit 3 and Exhibit 4 to the Declaration of Dennis Sladky. (Declaration of Adam Berkson ("Berkson Decl."), at ¶¶ 4–5.)  On that date, Gogo never obtained

---

[3] Unless otherwise specified, all paragraph references ("¶ __") are to Plaintiffs' Amended Complaint (Doc. No. 17), which they filed on April 24, 2014.

his signature or other affirmative authorization to either of these arbitration provisions.  (*Id.* at ¶¶ 6–7.)  Nor did Gogo ever obtain his signature or other affirmative authorization assenting specifically to any forum selection clause in any of the Exhibits to the Declaration of Dennis Sladky.  (*Id.* at ¶¶ 8–11.)

**Plaintiff Kerry Welsh**

Plaintiff Kerry Welsh is a resident of Rancho Palos Verdes, California.  (¶ 15.)  In August 2011, Mr. Welsh subscribed to Gogo's in-flight Wi-Fi service based on a representation that he was signing up for service for just one month.  (*Id.*)  Mr. Welsh incurred several hundreds of dollars in recurring monthly charges from September 2011 through December 2012 that he did not authorize after he purchased a one-month package in August 2011.  (*Id.*)  The charges to his credit card only stopped after he contacted Gogo to cancel the service.  (*Id.*)  Nor did Mr. Welsh receive any form of monthly bill or other monthly communication notifying him that he would be charged each month.  (*Id.*)

Furthermore, in August 2011, Mr. Welsh never saw, and never agreed to, the arbitration provisions shown in Exhibit 3 and Exhibit 4 to the Declaration of Dennis Sladky.  (Declaration of Kerry Welsh ("Welsh Decl."), at ¶¶ 4–5.)  On that date, Gogo never obtained his signature or other affirmative authorization to either of these arbitration provisions.  (*Id.* at ¶¶ 6–7.)  Nor did Gogo ever obtain his signature or other affirmative authorization assenting specifically to any forum selection clause in any of the Exhibits to Mr. Sladky's declaration.  (*Id.* at ¶¶ 8–11.)

## ARGUMENT

## I.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS

### A.   The Parties Never Agreed to Arbitrate

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* (the "FAA"), first enacted in 1925,

"places arbitration agreements upon the same footing as other contracts." *Schnabel*, 697 F.3d at 118 (internal citation and quotation marks omitted). The FAA "does not require parties to arbitrate when they have not agreed to do so." *Schnabel*, 697 F.3d at 118 (internal citations and quotation marks omitted). As the United States Supreme Court made clear in *AT&T Technologies, Inc. v. Communications Workers of America*, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute he has not agreed so to submit." 475 U.S. 643, 648 (1986) (internal citation and quotation marks omitted).[4] "The threshold question facing any court considering a motion to compel arbitration is therefore whether the parties have indeed agreed to arbitrate."[5] *Id.*; *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004). Arbitration "is 'a matter of consent, not coercion.'" *JLM Indus., Inc.*, 387 F.3d at 171 (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

Gogo has failed to meet its initial burden of showing the parties agreed to arbitrate. In its Motion, Gogo concedes there was **no arbitration provision** in the Terms of Use for its Internet service when Mr. Welsh made his purchase at issue in August 2011 or when Mr. Berkson made his purchase at issue on September 25, 2012. (Def. Mem. at 9.) Nonetheless, Gogo asks this Court to compel Plaintiffs to arbitrate their claims under the theory that Plaintiffs retroactively

---

[4] *Accord BG Grp., PLC v. Republic of Argentina*, 134 S. Ct. 1198, 1206 (2014); *Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 F. App'x 4, 6–7 (2d Cir. 2012).

[5] "It is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2855 (2010) (internal quotation marks and citations omitted); *see Dedon GmbH v. Janus et Cie*, 411 F. App'x 361, 363 (2d Cir. 2011). "[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock*, 130 S. Ct. at 2857–58. "Where a party contests either or both matters, 'the court' must resolve the disagreement." *Id.*

consented to arbitrate their disputes by purchasing Gogo's Internet services on a sporadic, as-needed basis in 2013 and 2014, after Gogo had changed its Terms of Use to include an arbitration provision.   (Def. Mem. at 2 ("The Terms of Use to which Plaintiffs agreed in each of their 2013 and 2014 sign-ups for Gogo service contain a broad arbitration provision requiring Plaintiffs to arbitrate their respective disputes with Gogo.").)  Gogo conveniently ignores the fact that Plaintiffs do not allege misrepresentations with respect to those later purchases, but, rather, they specifically point to purchases that occurred in August 2011 and September 2012, before Plaintiffs could have been aware of, let alone could have consented to, an arbitration provision in Gogo's Terms of Use.  Indeed, no arbitration provision existed at that those times.

Gogo would have this Court contravene a central tenant of contract law—that to assent to contractual terms, a party must be on notice of them. *Schnabel*, 697 F.3d at 123 (denying motion to arbitrate, holding that the consumer plaintiff was "not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious").  Defendants do not cite even one case in support of their theory, outside of cases in the broker/dealer context, where the arbitration clauses at issue covered the relationship and the account as a whole and were not transactional in nature.  Purchasing short-term access to the Internet while on an airplane is hardly equivalent to the type of formal relationship of trust created between an investor and her broker, and the contractual agreements at issue in the cases Defendants cite are wholly inapposite to this action.

In fact, the very essence of Plaintiffs' claims is that they believed, based on Gogo's representations, that they were entering into a limited transaction for the purchase of in-flight Internet services for one month.  Instead, Defendants enlisted them into a recurring, indefinite service without their consent.  Ironically, Defendants seek to tie each Plaintiff into a similarly

binding relationship with respect to other provisions in Gogo's Terms of Use, which Defendants contend have no temporal limits and can reach back into time to form an agreement to arbitrate a dispute that took place before an arbitration provision even existed.  The Second Circuit's decision in *Schnabel v. Trilegiant Corp.*, which also dealt with an online service, directly contradicts Defendants' position.

In *Schnabel*, the Second Circuit upheld the decision to deny a motion to compel arbitration.  *Schnabel*, 697 F.3d at 120.  In that case, as here, the arbitration provision did not appear on any web pages the plaintiffs would have encountered during their enrollment in the defendant's online services.  In determining the plaintiffs did not have sufficient notice of the arbitration provision, the Second Circuit found that "the arbitration provision here was both temporally and spatially decoupled from the plaintiffs' enrollment in and use of [the service] . . ."  *Id.* at 127.  The Second Circuit thus concluded that the plaintiffs had not provided meaningful assent to arbitrate their claims.  The Court stated, "'[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and ***knows or has reason to know*** that the other party may infer from his conduct he assents."  *Id.* at 120 (internal citation omitted) (emphasis added); *see also Hines v. Overstock.com, Inc.*, 380 Fed. App'x 22, 25 (2d Cir. 2010).

As in *Schnabel*, Mr. Berkson had no notice of any arbitration provision when he subscribed to the in-flight Internet services at issue on September 25, 2012, and, similarly, Mr. Welsh had no notice of any arbitration provision when he subscribed to Gogo's services in August 2011.  (Berkson Decl., at ¶¶ 4–7; Welsh Decl., at ¶¶ 4–7.)  According to Defendants, the first time that either Plaintiff Berkson or Plaintiff Welsh could possibly have had any notice of any arbitration provision was when he purchased new in-flight Internet services from Gogo in

January 2013 (or thereafter).

By Defendants' own account, any notice of Terms of Service that included an arbitration clause was decoupled temporally from Mr. Berkson's September 25th, 2012 purchase at issue by nearly four months or more.  Similarly, any notice of Terms of Service that included an arbitration clause was decoupled temporally from Mr. Welsh's August 2011 purchase at issue by over a year and four months.  Defendants provide no explanation as to how consent to the Terms of Use for a January 2013 subscription constituted assent to have the January 2013 Terms of Use retroactively applied to prior subscriptions.  *Schnabel*, 697 F.3d at 128 ("There must be facts in the record to support a finding that the counter-party intended to accept the terms.  Such acceptance need not be express, but where it is not, there must be evidence that the offeree knew or should have known of the terms and understood that acceptance of the benefit would be construed by the offeror as an agreement to be bound." (internal citation omitted)).

To the contrary, the very fact that consumers are required to acknowledge and agree to Terms of Use each and every time they subscribe to Gogo's in-flight Internet service suggests that Defendants themselves consider each subscription as a separate and discrete transaction that is temporally connected to a particular set of Terms of Use.  (*See* Def. Mem. at 6 ("On at least a dozen [occasions] after cancelling Gogo's service in January 2013, Berkson purchased Gogo's in-flight Internet service.  . . .   On at least 15 occasions after cancelling the Gogo monthly service in February of 2013, Welsh purchased Gogo's in-flight Internet service.  . . . ***On each such occasion, and as is required in order to subscribe, Plaintiffs acknowledge and agreed to the Terms of Use then in effect***." (emphasis added)).)  To argue that Plaintiffs gave meaningful assent to apply a set of Terms of Use from a January 2013 (or later) purchase retroactively to a prior subscription simply by purportedly agreeing to the January 2013 (or later) Terms of Use in

11

connection with a new subscription defies reasonable consumer expectations and legal precedent. This Court should deny Defendants' Motion to force arbitration and, instead, should reaffirm the black letter law of contracts by holding that Plaintiffs had no valid notice of an arbitration provision and, consequently, have no obligation to arbitrate their claims.

Further, as discussed above in the Introduction, Plaintiffs' claims fall outside of the scope of either of the arbitration clauses Gogo submitted.  Plaintiffs' claims do not relate in any way to or arise out of any "Site", "Domain", "Service", "Terms and Conditions", or "Agreement" as any of the foregoing things existed in December 2012 or May 2013.  *TradeComet.com LLC*, 435 F. App'x at 34; *Thomas*, 573 F.3d at 1119; *Wachovia Bank, Nat. Ass'n*, 445 F.3d at 769.

For the foregoing reasons, Plaintiffs never agreed to arbitrate their claims.

**B.     The  Arbitration  Clauses  Are  Unenforceable  Because  They  Are  Unconscionable**

Even assuming the parties agreed to arbitrate Plaintiffs' claims (which they did not), the arbitration clauses are nonetheless unenforceable because they are unconscionable.

The Supreme Court has stated that arbitration is a matter of contract, and arbitration agreements are on equal footing with other contracts.  *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010).  "Like other contracts . . . they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'"  *Id.* (quoting *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

An arbitration agreement is unenforceable if it is both procedurally and substantively unconscionable.  *NML Capital v. Republic of Argentina*, 621 F.3d 230, 237 (2d Cir. 2010) (citation omitted).  "Procedural and substantive unconscionability operate on a sliding scale; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa."  *Hojnowski v. Buffalo Bills, Inc.*, No. 13-CV-388S, 2014 WL

408717, at *4 (W.D.N.Y. Feb. 3, 2014) (internal citation and quotation marks omitted).

### 1.   The arbitration clauses are procedurally unconscionable

Under New York law, "[p]rocedural unconscionability is analyzed by considering a number of factors, including: (1) the size and setting of the transaction; (2) whether deceptive or high pressured tactics were used; (3) the use of fine print; (4) the experience and education of the party claiming unconscionability, and (5) whether there was a disparity in bargaining power." *Metro. Prop. & Cas. Ins. Co. v. Budd Morgan Cent. Station Alarm Co.*, 95 F. Supp. 2d 118, 121 (E.D.N.Y. 2000) (citation omitted).

***First***, the setting of the transaction unreasonably favored Gogo.  Plaintiffs had no option but to use Gogo's service if they wanted to access the Internet while in flight.  The Northern District of California's recent decision in *Stewart v. Gogo, Inc.*, No. C-12-5164 EMC, 2014 WL 324570 (N.D. Cal. Jan. 29, 2014), is worth noting in this connection.  In *Stewart*, the plaintiffs alleged that Gogo Inc. "has violated, *inter alia*, federal antitrust law because it has an unlawful monopoly in the 'market for inflight internet access services on domestic commercial airline flights within the continental United States.'"  *Stewart*, 2014 WL 324570, at *1.  Gogo Inc. moved to dismiss the plaintiffs' complaint, and the court denied the motion, concluding that the plaintiffs had "alleged plausible antitrust claims for purposes of Rule 12(b)(6)."  *Id.* at *3.

Plaintiffs' lack of options for in-flight Internet service meant that, even assuming Gogo successfully notified Plaintiffs of the arbitration clauses in connection with any 2013 and 2014 transactions, Plaintiffs had no choice but to accept the terms of the arbitration clauses.  Plaintiffs were not allowed to negotiate the arbitration provision, and they did not have the opportunity to take their business elsewhere.  The arbitration provision appeared in a take-it-or-leave-it format.  For these reasons, the setting also involved high pressure tactics, and the first two factors listed

13

above weigh against Defendants.

**Second**, Gogo's Terms of Use from December 2012 and May 2013, the two Terms of Use Gogo submitted that contain arbitration provisions, are generally in fine print and continue on for ten pages.  (Doc. No. 23-3; Doc. No. 23-4.)  The "fine print" factor weighs against Gogo.

**Third**, Plaintiffs are not attorneys and did not engage attorneys to assist them with signing up for Gogo's in-flight Internet service.   Since they do not have legal educational backgrounds, Plaintiffs do not have the educational experience that would greatly assist them in interpreting, analyzing, and evaluating dense, complicated contractual provisions that were drafted by attorneys, such as the arbitration clauses Gogo submitted here.  Thus, the "experience and education" factor weighs against Gogo.

**Finally**, there was an overwhelming disparity in bargaining power.   Plaintiffs are individual natural persons.  Gogo is a major corporation, with its stock traded on the NASDAQ. In 2013, Gogo made approximately $328 million in total revenue.[6]  Further, as discussed above, Plaintiffs had no opportunity to negotiate the terms of the arbitration provision or to take their business elsewhere.  Thus, Gogo had far greater bargaining power than Plaintiffs.

In sum, all factors indicate that the arbitration clauses are procedurally unconscionable.

### 2.     The arbitration clauses are substantively unconscionable

"Because . . . the arbitration provision is suffused with a high degree of procedural unconscionability, only a moderate finding of substantive unconscionability is required to render the arbitration provision unconscionable."  *Merkin v. Vonage Am. Inc.*, No. 2:13-CV-08026-CAS, 2014 WL 457942, at *9 (C.D. Cal. Feb. 3, 2014); *accord Armendariz v. Found. Health Psychcare Serv., Inc.*, 24 Cal. 4th 83, 99 (Cal. 2000).  "Substantive unconscionability requires

---

[6]  Gogo Inc., Annual Report (Form 10-K), at 54 (Mar. 14, 2014), *available at* http://www.sec.gov/Archives/edgar/data/1537054/000119312514100126/d659569d10k.htm.

looking at the substance of the bargain and deciding whether the 'terms were unreasonably favorable to the party against whom unconscionability is urged.'" *Metro. Prop.*, 95 F. Supp. at 121; *see Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003) ("Substantive unconscionability focuses on the one-sidedness of the contract terms."); *Armendariz*, 24 Cal. 4th at 115. Here, the delegation of arbitration is substantively unconscionable because Gogo carves out from the arbitration clauses those cases it would likely initiate, which unreasonably favors Gogo.

Courts in various jurisdictions have found that arbitration clauses that create the appearance of mutuality of obligation to arbitrate, but in truth, only require the weaker party to arbitrate are substantively unconscionable. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1173-74 (9th Cir. 2003) ("By essentially only covering claims that employees would likely bring against Circuit City, this arbitration agreement's coverage would be substantively one-sided[.]"); *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 785 (9th Cir. 2002); *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 169–71 (5th Cir. 2004) (upholding district court's ruling that an arbitration agreement was unconscionable where claims consumers were likely to make had to be arbitrated while cellular provider's claims could go to court).[7]

---

[7] *Independence Cnty. V. City of Clarksville*, 386 S.W.3d 395, 399–400 (Ark. 2012) ("[T]his court has consistently held that, where one party retains to itself the right to seek judicial relief, while the other party is strictly limited to arbitration, there is no mutuality of obligation."); *E-Z Cash Advance, Inc. v. Harris*, 60 S.W. 3d 436, 441 (Ark. 2001); *Wis. Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 172–74 (Wis. 2006) (finding an arbitration agreement that allowed the drafter to take certain claims to court, but forced all the claims of the consumer to arbitration was one-sided and thus unconscionable); *Palm Beach Motor Cars Ltd. v. Jeffries*, 885 So.2d 990, 992 (Fla. Dist. Ct. App. 2004) ("Where one party is bound to arbitration of its claims but the other is not, there can be substantive unconscionability."); *Iwen v. U.S. W. Direct, a Div. of U.S. W. Mktg. Res. Grp., Inc.*, 293 Mont. 512, 521–22 (Mont. 1999) (finding unconscionable an agreement where "the weaker bargaining party has no choice but to settle all claims arising out of the contract through final and binding arbitration, whereas the more powerful bargaining party and drafter has the unilateral right to settle a dispute for collection of fees pursuant to the agreement in a court of law"); *Taylor v. Butler*, 142 S.W.3d 277, 286 (Tenn. 2004) (finding unconscionable an arbitration agreement where the claims the dealer would bring were carved

The case of *Merkin v. Vonage America Inc.* is on point.  In that case, the defendant exempted from arbitration, *inter alia*, collection disputes, intellectual property disputes, and unauthorized use, theft, or piracy of service disputes.  *Merkin*, 2014 WL 457942, at *10.  The Central District of California found that "[a]lthough these exceptions purport to be bilateral, these are in fact precisely the disputes that are most likely to be brought by Vonage, and least likely to be brought by the subscriber."  *Id.*  Noting that "California courts routinely find such one-sided arbitration agreements to be substantively unconscionable," the court held that the arbitration provision lacked "the requisite 'modicum of bilaterality'" and held the provision to be both substantively and procedurally unconscionable.  *Id.* at *10–11.

Here, the December 2012 arbitration clause requires Plaintiffs to submit "any and all disputes and claims" to arbitration, but if Plaintiffs "have in any manner infringed upon or violated or threatened to infringe upon or violate Gogo's or any third party patent, copyright, trademark, trade secret, privacy or publicity rights," then Gogo or the third party may seek a remedy at law (and not in arbitration).  (Doc. No. 23-3, at 7.)  The May 2013 arbitration clause contains virtually identical language.  (Doc. No. 23-4, at 8.)  Gogo's arbitration clauses do not even pretend to afford Plaintiffs the same rights as they afford Gogo, explicitly limiting the ability to sue in court to Gogo and not Plaintiffs.  By the plain language of the arbitration clauses, Gogo has forced Plaintiffs to delegate actions they are likely to bring against it to arbitration, but carved out actions it is likely to bring against Plaintiffs, making the arbitration delegation

---

out but the claims the buyer would bring had to go to arbitration); *Rivera v. Am. Gen. Fin. Serv., Inc.*, 259 P.3d 803, 819 (N.M. 2011) ("American General's ability under the arbitration clause to seek judicial redress of its likeliest claims while forcing Rivera to arbitrate any claim she may have is unreasonably one-sided."); *Macias v. Excel Bldg. Serv., LLC*, 767 F. Supp. 2d 1002, 1009–10 (N.D. Cal. 2011) (finding the arbitration clause to be substantively unconscionable because the practical effect of the agreement was to limit only claims brought by weaker party against the stronger); *Steele v. Am. Mortgage Mgmt. Servs.*, No. 2:12-CV-00085 WBS, 2012 WL 5349511, at *5 (E.D. Cal. Oct. 26, 2012).

16

unreasonably favorable to Gogo.  *Merkin*, 2014 WL 457942, at *10.

Because the delegation of arbitration unreasonably favors Gogo, it is substantively unconscionable.  *Merkin*, 2014 WL 457942 (finding provision substantively unconscionable because it "purports to mutually bind both parties to arbitration, but instead acts to systematically grant [defendants] the forum of their choice").

As shown above, the delegation of arbitration is both substantively and procedurally unconscionable, meaning it is unenforceable.  Consequently, there is no valid agreement to arbitrate, and the Court should deny Defendants' motion to compel arbitration.

## II.  THE COURT SHOULD NOT TRANSFER THE CASE TO ANOTHER VENUE

### A.  Gogo's Motion to Transfer under 28 U.S.C. § 1404(a) Is Premature, and the Court Should Deny It to Allow for Discovery on the Issue

Defendants have moved to transfer under 28 U.S.C. § 1404.  (Def. Mem. at 12–15.)  The burden is on the moving party to show that transfer under Section 1404(a) is warranted.  *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

The decision of whether to transfer the case under Section 1404(a) involves an "individualized, case-by-case consideration."  *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *see Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988) ("*Stewart*").  In the Second Circuit, the factors the court may consider in determining whether to grant a motion to transfer venue under Section 1404(a) include but are not limited to:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*New York Marine & Gen. Ins. Co.*, 599 F.3d at 112 (internal citation and quotation marks omitted). "Some courts have identified additional factors, including (1) 'the forum's familiarity with governing law,' and (2) 'trial efficiency and the interest of justice, based on the totality of the circumstances.'" *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 348 (E.D.N.Y. 2012).[8]

Significantly, many of these factors (such as the location of witnesses and relevant documents) are an evidentiary issue that requires discovery to evaluate. Since discovery on these issues has not taken place, Defendants' Motion is premature. For this reason, the Court should deny Defendants' motion as premature.

**B.     Even If the Court Were to Address the Motion to Transfer Now (Which It Should Not), It Should Not Transfer Plaintiffs' Action to Another Court**

Even if the Court were to determine the forum selection issue now (which it should not), Gogo's arguments concerning transfer are wrong. Gogo misapplies the legal framework for analyzing a transfer motion under 28 U.S.C. § 1404(a) on the basis of an alleged pre-existing agreement to a forum. (*See* Def. Mem. at 12–13 (arguing, incorrectly, that forum selection clauses are "prima facie valid").) Applying the correct legal framework here requires that the Court first determine under state contract law whether there is a binding and legally enforceable contract including a forum-selection clause. *See, infra*, Part III.B.1. Here, there is no such agreement under state contract principles. *See, infra*, Part III.B.2. However, even applying the rule from the case Gogo cites, *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)

---

[8] In *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, the Supreme Court unequivocally held that a valid and otherwise enforceable forum selection clause is but one factor in determining whether to compel transfer under the balancing test set forth in Section 1404(a). 134 S. Ct. 568, 581–83 (2013) (discussing adjustments courts must make to Section 1404(a) analysis in the event a forum selection clause is valid) ("*Atlantic Marine*").

("*Bremen*"), the forum selection clause nevertheless is invalid.  *See, infra*, Part III.B.3.

Because there is no valid agreement requiring Plaintiffs to litigate their claims in a different forum, the Court should evaluate transfer under a traditional Section 1404(a) analysis, not under the modified analysis set forth in *Atlantic Marine*.  *Atl. Marine*, 134 S. Ct. at 581 n.5 ("Our analysis presupposes a contractually valid forum-selection clause.").  Because the traditional Section 1404(a) factors weigh heavily in favor of Plaintiffs, the Court should deny Gogo's motion to transfer this case to the Northern District of Illinois.  *See, infra*, Part III.B.4.

## 1.      Gogo presumes applicability of the wrong law

Gogo presumes the standards set forth in *Bremen*, an admiralty case decided under federal common law, control the transfer inquiry in the context of a Section 1404(a) motion in a diversity action.  (Def. Mem. at 12–13.)  Gogo is wrong.  The Court should not rely on federal common law to evaluate the substantive contract law issues present here—*i.e.*, whether the parties ever agreed to a forum.  Instead, the Court should evaluate that question using principles of state contract law.

Because Gogo's Motion requests transfer under Section 1404(a) in a diversity action, the Supreme Court's decision in *Stewart Organization, Inc. v. Ricoh Corp.*, not *Bremen*, governs how the court should handle the forum selection provision.  *Stewart*, 487 U.S. at 28–29 (holding enforceability of a forum selection clause pursuant to Section 1404(a) motion should not have been analyzed under *Bremen*, but rather decided under the Section 1404(a) balancing test).[9]  The

---

[9] *See also TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 478 (2d Cir. 2011) (holding that "*Stewart* deals with motions to transfer pursuant to § 1404(a), while *Bremen* . . . [addresses] the grant of dismissal or summary judgment based on a forum selection clause"); *Red Bull Assoc. v. Best W. Int'l, Inc.*, 862 F.2d 963 (2d Cir. 1988) (applying Section 1404(a) analysis and denying motion to transfer based on forum selection clause); *Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992) ("The proper methodology for addressing a motion to transfer under section 1404(a) was set out by the Second Circuit in *Red Bull* . . . This Court must

Supreme Court's holding in *Stewart* was narrow: Section 1404(a) "governs the District Court's decision whether to give effect to the parties' forum-selection clause" and transfer.  *Id.*, 487 U.S. at 23.  In other words, federal law—Section 1404(a)—governs enforceability, *not validity*.  *See Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1068–70 (11th Cir. 1987) (*en banc*), *aff'd* 487 U.S. 22.  Thus, the only relevant question of federal law is whether to effect the transfer under Section 1404(a) based on the forum selection provision and the various Section 1404(a) factors—the entirety of the analysis that should precede that question (*i.e.*, concerning whether the parties formed an agreement containing a forum selection provision in the first place) is a matter of state substantive law.  *See Martinez v. Bloomberg LP*, 740 F.3d 211, 220–21 (2d Cir. 2014); *Stewart*, 810 F.2d at 1076–77 (11th Cir.) ("The fallacy in characterizing the problem as 'just a dispute over venue' is that it leads [one] to conclude that because there is a federal venue statute the dispute is a procedural matter and therefore a federal matter. . . . This case is not about what court is suitable.  It is about an agreement to choose between suitable courts.").

As a result, the Court should use principles of state substantive contract law, not *Bremen*, to determine the existence of a legally enforceable agreement between the parties.

### 2.    The forum selection clauses are unenforceable

As discussed below, neither Plaintiff specifically agreed to a forum selection provision in connection with the August 2011 and September 2012 transactions at issue.  That is, Mr. Welsh did not specifically agree to any forum selection clause when he purchased in-flight Internet service for one month in August 2011, and Mr. Berkson did not specifically agree to any forum selection clause when he purchased in-flight Internet service for one month in September 2012.  Further, even assuming Plaintiffs agreed to a forum selection clause (which they did not), by

---

determine whether the forum selection clause is valid with reference to the factors specified in section 1404(a)[.]").

their plain language, none of the forum selection clauses Gogo submitted with its Motion (Doc. No. 23-1, at 9; Doc. No. 23-2, at 8; Doc. No. 23-3, at 9; Doc. No. 23-4, at 9) applies to Plaintiffs' action.  Finally, the forum selection clauses Gogo submitted are unconscionable.

       (i)       <u>Plaintiffs did not specifically agree to any forum selection clause in connection with their purchases at issue</u>

"While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract."  *Edme v. Internet Brands, Inc.*, 968 F. Supp. 2d 519, 525 (E.D.N.Y. 2013) (internal citation and quotation marks omitted).  "Mutual manifestation of assent, whether by written or spoken word or by conduct is one such principle."  *Id.* (internal citation and quotation marks omitted).

Here, mutual assent is lacking.  Mr. Berkson did not specifically assent to any forum selection provision at the point of sale in his September 25, 2012, transaction at issue.  (Berkson Decl., at ¶¶ 8–11.)  Similarly, Mr. Welsh did not specifically assent to any forum selection provision at the point of sale in his August 2011 transaction at issue.  (Welsh Decl., at ¶¶ 8–11.)  Tellingly, neither Plaintiff provided Gogo with a signature or other form of affirmative authorization acknowledging assent to any forum selection provision in connection with their respective transactions at issue.  (Berkson Decl., at ¶¶ 8–11; Welsh Decl., at ¶¶ 8–11.)  Consequently, neither Plaintiff agreed to litigate the claims at issue in the Northern District of Illinois, a forum to which they have no contacts.

       (ii)      <u>By their plain language, none of the forum selection clauses Gogo submitted with its Motion applies to Plaintiffs' action</u>

The forum selection clause Gogo claims was included in its Terms of Use as of August 2011 states that "any claim or dispute one party has against the other party *arising under or relating to this Agreement* . . . must be resolved exclusively by a court . . . located in Chicago,

21

Illinois, and no other court."  (Doc. No. 23-1, at 9 (emphasis added); *see also* Doc. No. 23, at ¶

3.)  The forum selection clause Gogo claims was included in its Terms of Use as of September

25, 2012, includes an identical statement (Doc. No. 23-2, at 8; *see also* Doc. No. 23, at ¶ 4), as

do the forum selection clauses Gogo claims were included in its Terms of Use as of December

13, 2012 (Doc. No. 23-3, at 9; *see also* Doc. No. 23, at ¶ 5) and May 20, 2013 (Doc. No. 23-4, at

9; *see also* Doc. No. 23, at ¶ 6).

     Plaintiffs' claims, however, do not "arise under or relate to" any version of the Terms of

Use.  None of Plaintiffs' claims seeks to enforce any of the Terms of Use.  Rather, Plaintiffs are

claiming Gogo engaged in fraud and false advertising separate and apart from the Terms of Use.

(*E.g.*, ¶¶ 67–70 (alleging Gogo engaged in false advertising in violation of California's False

Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq.*).)  Thus, because Plaintiffs' claims do

not "arise under or relate to" any Terms of Use, none of the forum selection clauses Gogo

submitted applies to Plaintiffs' claims, by the plain language of each clause.

     Further, each of the Terms of Use Gogo submitted provides that the Terms "will remain

in full force and effect ***unless and until*** . . . your Account is terminated as provided herein.  . . .

You may terminate your Account at any time, for any reason[.]"  (Doc. No. 23-1, at 4 (emphasis

added); *accord* Doc. No. 23-2, at 3; Doc. No. 23-3, at 3; Doc. No. 23-4, at 3.)  As Gogo

concedes, Mr. Welsh canceled his service in February 2013.  (Doc. No. 22, at ¶ 9 ("Gogo's

records indicate that Mr. Welsh called to cancel his monthly service subscription in February of

2013, and Gogo complied.").  Thus, even assuming one or more incarnations of Gogo's Terms of

Use applied to Mr. Welsh at some point (which they did not), Mr. Welsh affirmatively ended

their applicability when he terminated his use of Gogo's services in February 2013; this is in

accordance with the plain language of each of the Terms of Use Gogo submitted with its Motion.

(iii)    The forum selection clauses are unconscionable

For reasons very similar to the reasons discussed above in Part I.B with respect to the arbitration clauses, the forum selection clauses Gogo submitted with its Motion are procedurally and substantively unconscionable.

*First*, the forum selection clauses are procedurally unconscionable for the very same reasons that the arbitration clauses are procedurally unconscionable. *See, supra*, Part I.B.  The setting of the transaction unreasonably favors Gogo and constitutes a high pressure setting, due to Plaintiffs' lack of options and inability to negotiate.  The forum selection clauses are generally in fine print, buried in the midst of around ten pages of legal provisions.  Plaintiffs are not attorneys, and there was an overwhelming disparity in bargaining power between Plaintiffs, individuals, and Gogo, which brings in hundreds of millions of dollars in revenue a year.  In sum, all factors indicate the forum selection clauses are procedurally unconscionable.

*Second*, because the forum selection clauses were suffused with a high degree of procedural unconscionability, only a moderate finding of substantive unconscionability is required to render the forum selection provisions unconscionable.  *Hojnowski*, 2014 WL 408717 at *4.  Here, Gogo chose a forum where the federal courts allow defendants to pick off class action plaintiffs, *see Damasco v. Clearwire Corp.*, 662 F.3d 891 (7th Cir. 2011), which Gogo proceeded to attempt to do.  Further, Gogo chose the courts in Chicago, Illinois, because it is headquartered in Itasca, Illinois (*see* ¶¶ 16, 17), which is virtually in Chicago.  Plaintiffs, who are residents of New York and California, would incur significant expense to litigate in Chicago.  Thus, the forum selection provision unreasonably favor Gogo's interests to the detriment of Plaintiffs.

Due to the high degree of procedural unconscionability and the significant degree of

substantive unconscionability, the forum selection clauses as a whole are unconscionable and, consequently, unenforceable.  As a result, the Court should evaluate the Section 1404(a) factors using a traditional analysis, as discussed below.

### 3. Even applying *Bremen*, the forum selection clause is invalid

As set forth above, *Bremen* does not control the inquiry of whether to transfer this action under Section 1404(a) in connection with the forum selection clause.  However, because the four-prong test set forth in *Bremen*[10] may be "instructive" in evaluating the Section 1404(a) balancing test, *see Stewart*, 487 U.S. at 28–29,[11] Plaintiffs briefly address Gogo's *Bremen*-related arguments below.  Gogo fails to meet the first and third prongs of the test set forth in footnote ten: Gogo failed to reasonably communicate the forum selection clause to Plaintiffs in connection with the August 2011 and September 2012 transactions at issue, and Plaintiffs' claims are not within the scope of any forum selection clause Gogo submitted in connection with its Motion.

Gogo failed to reasonably communicate the forum selection clause to Plaintiffs. "Reasonable communication" is an alternate characterization of the mutual assent inquiry. Plaintiffs did not affirmatively acknowledge the Terms of Service at the point of sale in August 2011 (Mr. Welsh) and September 2012 (Mr. Berkson).  (¶ 22.)  For this reason, mutual assent is

---

[10] The *Bremen* test to determine whether to dismiss under the *forum non conveniens* doctrine based on a forum selection clause involves a four-part analysis. *Martinez*, 740 F.3d at 217.  The courts ask: (1) whether the clause was reasonably communicated to the party resisting dismissal; (2) whether the clause is mandatory or permissive; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause.  *Id.* (citation omitted).  If the forum clause meets these requirements, a presumption arises that the court should dismiss the claim which the party opposing dismissal can only overcome by (4) making a sufficiently strong showing that dismissal would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.  *Id.* (citation omitted).

[11] *But cf. Texas Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 641–42 (1981) (federal common law developed under admiralty jurisdiction not freely transferable to diversity setting).

lacking, and Gogo did not reasonably communicate the forum selection clause to Plaintiffs. *See, supra*, Part III.B.2(i).

Moreover, Plaintiffs' action does not fall within the scope of any of the forum selection clauses Gogo submitted, for the reasons set forth above. *See, supra*, Part III.B.2(ii).

4.    **The Court should retain jurisdiction of Plaintiffs' action under 28 U.S.C. § 1404**

Even if this Court were to examine the Section 1404(a) factors set forth above in Part III.A based on an incomplete record (which it should not), the factors demonstrate that the Court should keep the action in Plaintiffs' choice of forum—the place where the first named plaintiff Mr. Berkson lives and where he purchased the services at issue.  Moreover, since Gogo usually is offered on long haul—*i.e.*, transcontinental—flights, a substantial number of flights that involve Gogo are connected to New York-based airports.  (*Cf.* Granade Decl., Ex. 2 ("United now offers Gogo® service on all p.s.® premium service transcontinental flights, which are available between New York (JFK) and both Los Angeles (LAX) and San Francisco (SFO).").)

***First***, Plaintiffs' choice of forum is "a decision that is given great weight." *D.H. Blair & Co., Inc.*, 462 F.3d at 107.  "Thus, a plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *EasyWeb Innovations, LLC*, 888 F. Supp. 2d at 348 (internal citation and quotation marks omitted).  The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Moreover, "a plaintiff's choice of forum is entitled to [even] greater deference when the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S. Ct. 252, 266, 70 L. Ed. 2d 419 (1981).

Here, Plaintiffs chose to sue in this Court.  Furthermore, Mr. Berkson is a resident of

New York, New York, and he was a resident of New York, New York, when he made his purchase at issue at LaGuardia Airport in New York.  (¶¶ 14, 20.)  Consequently, the Court should afford Mr. Berkson's forum choice great deference, which Defendants must make a very strong showing to overcome.  *D.H. Blair & Co., Inc.*, 462 F.3d at 107; *Piper Aircraft Co.*, 454 U.S. at 255.  Plaintiffs have also chosen counsel who are based in New York.

*Second*, the locus of a substantial number of the operative facts is within this District. Mr. Berkson was living in New York, New York, when he made his purchase at issue at LaGuardia Airport in reliance on the false and misleading representations Gogo communicated to him there.  (¶ 14.)  Mr. Berkson's economic injuries occurred within this District.  Thus, there are significant contacts relating Mr. Berkson's cause of action to New York.  Similarly, the parties have numerous contacts with New York, as Gogo sells its services throughout the State and Mr. Berkson's purchase occurred in New York while he was living in New York.

*Third*, "[w]here a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed."  *EasyWeb Innovations, LLC*, 888 F. Supp. 2d at 354–55 (internal citations and quotation marks omitted).  Here, Defendants are large corporations with vastly superior financial resources to Plaintiffs, who are individuals.  Thus, this factor favors retention of Plaintiffs' action in New York.

*Finally*, several of the remaining factors are either neutral or favor keeping the case in this Court.  First, both forums are able to compel the attendance of unwilling witnesses, so "the availability of process to compel" such attendance is a neutral factor.  Second, this Court is more familiar with the governing law.  Plaintiffs bring claims under New York and California law. (*E.g.*, ¶¶ 42–47, 48–59, 60–66, 67–70.)  As a result, a court in Illinois will be less familiar than

this Court with the governing law.  Third, the interests of justice favor litigation in New York because the State of New York has a strong interest in protecting persons injured within its borders by unfair and deceptive trade practices.

In sum, Plaintiffs' forum choice (a heavily-weighted factor), the locus of the injury, and the relative means of the parties all strongly favor keeping the action within this Court, and many of the remaining factors are neutral or suggest transfer would be inappropriate.  The few factors that may arguably favor Defendants do not overcome the overwhelming weight of factors favoring denial of transfer under Section 1404.  *See Whitney Lane Holdings, LLC v. Sgambettera & Associates, P.C.*, No. 08-cv-2966 JS, 2010 WL 4259797, at *3 (E.D.N.Y. Sept. 8, 2010) (argument that "virtually all non-party witnesses" were located in the proposed transferee district was unpersuasive because plaintiff's choice of forum was "presumptively entitled to substantial deference" and because the movant had not demonstrated that most witnesses existed in the transferee district or would have difficulty testifying if forced to litigate in the original district).

## III.  PLAINTIFFS HAVE STANDING TO PURSUE THE CLASS CLAIMS ASSERTED IN THE COMPLAINT

Defendants claim that neither Plaintiff has standing to bring claims because, even though Plaintiffs were charged improper fees, Plaintiffs have since been paid back.  Defendants are wrong, and their attempt to pick-off a class plaintiff (particularly in the case of Kerry Welsh) raises serious ethical concerns and should be rejected.  Indeed, as explained below, Defendants' conduct violates both the CLRA and Federal Civil Procedure Rule 23.  As numerous other courts also have done, the Court should reject Defendants' attempt to extinguish a class action through a pick-off of the named plaintiff.

### A.    Factual and Procedural Background

A quick history of this matter is important to underscore the impropriety of Defendants'

conduct and that their standing arguments should be rejected.

As Defendants admit, Mr. Welsh canceled his service in February 2013 and demanded a full refund of the amounts improperly charged to him.  (Doc. No. 22, at ¶ 9.)  However, Defendants refused to give Mr. Welsh a full refund.  Accordingly, Mr. Welsh hired the undersigned counsel to represent him, as well as the numerous other consumers who have been misled by Defendants in a class action.

On July 24, 2013, Mr. Welsh's counsel sent Defendant Gogo LLC a pre-suit demand letter, as is required by the CLRA.  (Granade Decl., Ex. 1.)  The CLRA is similar to Federal Rule of Civil Procedure 23 in that it is established to protect the interests of a class.  *See* Cal. Civ. Code § 1782.  As required by statute, Mr. Welsh demanded, on his own behalf and on behalf of consumers similarly situated, a full refund for the improper charges, as well as punitive damages, attorneys' fees, and costs.

In response to Mr. Welsh's CLRA letter, Defendants hired an outside law firm.[12]  Upon information and belief, at the direction of their outside law firm, Defendants attempted to pay-off Mr. Welsh in August of 2013 by sending him approximately $500.00 in response to Mr. Welsh's CLRA letter sent by his undersigned attorneys.  Defendants did this despite the fact that they knew Mr. Welsh to be represented by counsel.

Finally, the approximately $500.00 sent to Mr. Welsh in response to his attorneys' letter does not cover all that Mr. Welsh seeks to obtain monetarily in his claims asserted in the Complaint, but rather falls short of the amount he would be due if he won at trial.  The same is true in the case of the purported "refund" offered to Mr. Berkson.  *See* N.Y. Gen. Bus. Law § 349(h) ("Any person who has been injured by reason of any violation of this section may bring

---

[12] The outside law firm is not the same as counsel of record for Defendants in this case.

an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.").   Mr. Berkson only received $104.85.  However, his statutory damages are $150.00.  Defendants are $45.15 short.

   **B.    Defendants Have Failed to Carry Their Burden to Demonstrate That Their Payment Moots Plaintiffs' Action**

Defendants contend that their payments to Plaintiffs offer full relief to Plaintiffs.  As a result, the burden of proof is on Defendants.  *See, e.g.*, *Hugh's Concrete & Masonry Co. v. Se. Pers. Leasing, Inc.*, No. 8:12-CV-2631-T-17AEP, 2013 WL 5798638, at *5 (M.D. Fla. Oct. 28, 2013) ("Because the terms of the Offer of Judgment were entirely within Defendant's control, and because Defendant contends that Defendant has offered full relief to Plaintiff, the Court views the burden of proof to be on Defendant.").  As seen below, however, Gogo has failed to meet its burden.

Moreover, even if Defendants were factually correct (which they are not) that the payments to Plaintiffs completely satisfied their claims, because this matter involves a class action, Federal Civil Procedure Rule 23, as well as the CLRA, undermine Defendants' argument and require that this consumer class action be allowed to proceed.

   **C.    The Payments to the Plaintiffs Do Not Completely Cover Their Claims**

As stated above, each of the Plaintiffs are entitled to certain statutory damages and monetary remedies.  The payments to Plaintiffs at issue here, however, do not completely satisfy these claims.  As held by one court in a similar situation:

> In determining whether the Offer of Judgment has rendered Plaintiffs' claims moot, the Court's starting point is to compare the terms of the Offer of Judgment with the relief sought in the Amended Complaint.  A Rule 68 Offer of Judgment is construed according to contract principles.

*   *   *

29

> [Where] the parties have not reached a consensus on the amount of damages due to Plaintiff, the issue of damages remains in dispute, and dismissal on the basis of mootness is not appropriate.
>
> After consideration, based on the current record, the Court finds that Defendant has not established that the Rule 68 Offer is definitively for more than the amount Plaintiff could recover at trial. The Court therefore denies the Motion to Dismiss as to this issue.

*Hugh's Concrete & Masonry Co.*, 2013 WL 5798638, at *6–7.

This situation is akin to that in *Hugh's Concrete & Masonry Co.* The amounts sent to Plaintiffs do not fully cover their claims asserted in the Amended Complaint. Accordingly, a case and controversy exists and Plaintiffs have Article III standing to pursue their claims, both on their own behalf and on behalf of other defrauded class members.

### D.    Defendants' Conduct Also Runs Afoul of Rule 23 and Does Not Extinguish Standing

Even if Defendants were correct that the payments made to the Plaintiffs completely and fully satisfied Plaintiffs' individual claims (which they do not, as monies are still due to Plaintiffs on their claims), Defendants' arguments for dismissal still fail. Specifically, Defendants' attempted pick-off violates the spirit of class actions (as codified in Federal Civil Procedure Rule 23) and does not extinguish standing. As held by the Second Circuit:

> Class certification will preserve an otherwise moot claim. In class actions . . . courts have come to recognize that an individual plaintiff may continue to represent the interests of others even after any prospect of individual recovery has vanished.

*Comer v. Cisneros*, 37 F.3d 775, 785 (2nd Cir. 1994). The logic behind this was explained recently by the Ninth Circuit:

> A rule allowing a class action to become moot "simply because the defendant has sought to 'buy off' the individual private claims of the named plaintiffs" before the named plaintiffs have a chance to

> file a motion for class certification would . . . contravene Rule 23's core concern: the aggregation of similar, small, but otherwise doomed claims.  It would effectively ensure that claims that are too economically insignificant to be brought on their own would never have their day in court.  In those cases in which it is financially feasible to pay off successive named plaintiffs, the defendants would have the option to preclude a viable class action from ever reaching the certification stage.  Treating pre-certification settlement offers as mooting the named plaintiffs' claims would have the disastrous effect of enabling defendants 'to essentially opt-out of Rule 23.'  And even if it does not discourage potential claimants, it "may waste judicial resources by 'stimulating successive suits brought by others claiming aggrievement.
>
> Accordingly, we hold that an unaccepted Rule 68 offer of judgment—for the full amount of the named plaintiff's individual claim and made before the  named plaintiff files a motion for class certification—does not moot a class action.

*Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091–92 (9th Cir. 2011).  Likewise, the Third Circuit has explained:

> Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement.

*Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 195 (3d Cir. 2011) (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 100 S. Ct. 1166, (1980)); *see also Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1050 (5th Cir. 1981).

Accordingly, given that this is a proposed class action, Defendants' motion to dismiss for lack of standing must be denied.

### E.   Defendants' Conduct Runs Afoul of the Consumers Legal Remedies Act

Likewise, Defendant's conduct runs afoul of the CLRA, which, like Federal Civil Procedure Rule 23, was enacted to protect absent class members.

Specifically, section 1782 of the CLRA requires a plaintiff prior to bringing a lawsuit to do the following (emphasis added):

> (a) Thirty days or more prior to the commencement of an action for damages pursuant to this title, the consumer shall do the following…Demand that the person correct, repair, replace, or otherwise rectify the goods or services alleged to be in violation of Section 1770.

> (b) Except as provided in subdivision (c), no action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice.

> (c) No action for damages may be maintained under Section 1781 upon a showing by a person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770 that all of the following exists:

>> *(1) All consumers similarly situated have been identified, or a reasonable effort to identify such other consumers has been made.*

>> *(2) All consumers so identified have been notified that upon their request the person shall make the appropriate correction, repair, replacement, or other remedy of the goods and services.*

>> *(3) The correction, repair, replacement, or other remedy requested by the consumers has been, or, in a reasonable time, shall be, given.*

In other words, the CLRA only allows a defendant on notice to extinguish a class action if it makes remedy to *all consumers* (and not just the named plaintiff). Defendants failed to do this. Rather, they have attempted to undermine the CLRA by trying to pay off only the named plaintiff Kerry Welsh, who simply was complying with the CLRA when he sent Defendants a demand letter before filing suit. Defendants' action of paying Mr. Welsh (who Defendants—and their outside counsel—knew was represented by the undersigned counsel) violates the spirit and

letter of the CLRA.  Accordingly, for the same reasons enunciated above with respect to Rule 23, Defendants' motion to dismiss for lack of standing must be denied.

## IV.     PLAINTIFFS HAVE STATED A CLAIM WITH RESPECT TO EACH OF THEIR CAUSES OF ACTION

### A.     Plaintiffs Have Properly Pled Unjust Enrichment

Plaintiffs plead their seventh claim, for restitution/unjust enrichment, in the alternative to their other claims.  (¶ 88.)  In support of dismissal of this claim, Gogo argues that Plaintiffs have "effectively concede[d] their contractual relationship with Gogo."  (Def. Mem. at 20.)  First, Gogo's argument is premature at this stage, as the Second Circuit recently explained in *Tianbo Huang v. iTV Media, Inc.*, reviewing an order regarding a Rule 12(b)(6) motion:

> Defendants argue that the unjust enrichment . . . [claim is] duplicative of plaintiff's breach of contract claim, but that argument is premature at this stage.  "[A] plaintiff may plead two or more statements of a claim, even within the same count, ***regardless of consistency***."  *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994).

No. 13-CV-3439 JFB WDW, 2014 WL 1377500, at *9 (E.D.N.Y. Apr. 8, 2014) (emphasis added).  Furthermore, "[w]here . . . there is a bona fide dispute as to the existence of a contract, or where the contract does not cover the dispute in issue, a plaintiff may proceed upon a theory of quasi-contract as well as breach of contract, and will not be required to elect his or her remedies."  *Plumitallo v. Hudson Atl. Land Co., LLC*, 74 A.D.3d 1038, 1039, 903 N.Y.S.2d 127, 128 (2010).  As discussed above, *see, supra*, Part III.B.2, Plaintiffs dispute whether they agreed to the Terms of Use in connection with their August 2011 and September 2012 transactions at issue, and Plaintiffs dispute whether any of the Terms of Use Gogo submitted cover their claims that Gogo misled consumers.  Consequently, Plaintiffs' unjust enrichment claim may proceed, and Plaintiffs need not elect their remedies.  *Plumitallo*, 74 A.D.3d at 1039.

Gogo's cite to *Labajo v. Best Buy Stores, L.P.*, 478 F. Supp. 2d 523 (S.D.N.Y. 2007) (Def. Mem. at 19–20) is surprising, since in that case the defendant raised the same argument Gogo raises here, and the court ***denied*** the defendant's motion for judgment on the pleadings on the plaintiff's unjust enrichment claim. *Labajo*, 478 F. Supp. 2d at 531 ("When there is a bona fide dispute as to the existence of a contract, a party may proceed upon a theory of unjust enrichment, and an unjust enrichment claim may be alleged alongside a breach of contract claim . . . Accordingly, Labajo's unjust enrichment claim survives."). Here, as in *Labajo*, there is a bona fide dispute as to the existence of any contract between Plaintiffs and Gogo. As a result, *Labajo* fails to aid Gogo, and the Court should deny Gogo's motion to dismiss Plaintiffs' unjust enrichment claim.[13]

**B.     Plaintiffs Have Successfully Pled Breach of the Implied Covenant of Good Faith and Fair Dealing**

"[U]nder New York law, there is an implied duty of good faith and fair dealing in every contract[.]" *U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co.*, 369 F.3d 34, 64 (2d Cir. 2004); *accord In re HSBC BANK, USA, N.A., Debit Card Overdraft Fee Litig.*, No. 13-MD-2451 ADS AKT, 2014 WL 868827, at *13 (E.D.N.Y. Mar. 5, 2014) ("Implicit in all contracts is a covenant

---

[13] Gogo cites *Beth Israel Medical Center v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573 (2d Cir. 2006), but that case does not aid them. As the Second Circuit there explained, "[i]t is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, ***the existence of which is undisputed*** . . . ." *Id.*, 448 F.3d at 587 (citation omitted) (emphasis added). The Second Circuit dismissed the unjust enrichment claims at summary judgment because it had determined, "as the [plaintiffs] insisted" that it should, that contractual relationships existed between the plaintiffs and the defendant. *Id.*, 448 F.3d at 586. Here, by contrast, Plaintiffs dispute the existence of any valid contract between themselves and Gogo. (*See, e.g.*, ¶ 22 ("Gogo obtained no signature or affirmative authorization to charge for recurring fees.").) Gogo's cite to *Rensselaer Polytechnic Institute v. Varian, Inc.*, 340 F. App'x 747 (2d Cir. 2009), fails for the same reasons. There, the Second Circuit dismissed a claim for money had and received on summary judgment because it found that the parties' conduct constituted a lawful contract. 340 F. App'x at 749.

of good faith and fair dealing in the course of contract performance.") ("*In re HSBC BANK*").
"Encompassed within the implied obligation of each promisor to exercise good faith are 'any
promises which a reasonable person in the position of the promisee would be justified in
understanding were included.'" *Id.* (citation omitted).  "Ordinarily, the covenant of good faith
and fair dealing is breached where a party has complied with the literal terms of the contract, but
has done so in a way that undermines the purpose of the contract and deprives the other party of
the benefit of the bargain." *Id.* (internal citation and quotation marks omitted).

To the extent Plaintiffs entered into agreements with Gogo concerning its in-flight
Internet service, Gogo implicitly covenanted to act in good faith and deal fairly with Plaintiffs in
the performance of those agreements.  Gogo, however, performed the agreements in an "abusive
manner," so as to "maximize [its own] revenue and to penalize customers as much as possible."
*In re HSBC BANK*, 2014 WL 868827, at *14 (internal citation and quotation marks omitted).
Specifically, Gogo charged customers, including both Plaintiffs, recurring monthly amounts
beyond the single-month amount it represented it would charge, without notice (¶¶ 22–23).  In
other words, Plaintiffs each agreed to pay for one month, and only one month, of in-flight
Internet service, and Gogo abused that agreement to maximize its own profits by charging
Plaintiffs for numerous months without notice.  Further, as it continued to charge customers
recurring charges every month, Gogo failed to provide notice via any form of monthly bill or
other monthly communication apprising the customers of the recurring charges.  (¶¶ 9, 22, 28–
29.)

Moreover, as Gogo concedes, when both Mr. Berkson and Mr. Welsh contacted it to ask
for a refund, Gogo failed to provide a full refund.  (¶¶ 10–11; Doc. No. 22, at ¶¶ 5, 9.)  Indeed,
Plaintiffs' Amended Complaint alleges that Gogo "refused" to provide Mr. Berkson a full

refund.  (¶ 10.)  Further, Gogo concedes it only refunded Mr. Welsh a partial amount in April

2013, approximately two months after Mr. Welsh contacted Gogo in February 2013.  (Doc. No.

22, at ¶ 9.)  Gogo concedes it did not fully refund Mr. Welsh until August 2013 (*id.*)—*i.e.*, Gogo

*only* gave Mr. Welsh a full refund *after* it had received a letter from Mr. Welsh's undersigned

counsel dated July 24, 2013, advising Gogo of its violations of the CLRA, and Mr. Welsh's

contemplated class action against it.

### C.    Mr. Berkson Has Successfully Pled a Claim for Violation of New York General Business Law Section 349

Mr. Berkson has pled a claim for violation of New York General Business Law section

349 ("GBL 349") because he has pled that Gogo's consumer-oriented representations concerning

billing for its in-flight Internet services were materially misleading to reasonable consumers and

that he was injured as a result (by paying three months' worth of recurring bills, without notice).

Gogo's arguments to the contrary suffer from numerous material flaws, and the Court should

deny its motion to dismiss Mr. Berkson's GBL 349 claim.

*First*, Gogo mischaracterizes Mr. Berkson's GBL 349 claim as an omission claim.  (Def.

Mem. at 23.)  However, Plaintiffs have pled that Mr. Berkson paid for Gogo's service "based on

a *representation* that he was signing up for the service for one month."  (¶ 7 (emphasis added);

*see also* ¶ 21 ("Plaintiffs each purchased in-flight Internet service from Gogo in reliance on the

representations on Gogo's website that they would be charged only for one month of service.").)

Thus, Gogo's argument that Mr. Berkson has failed to plead the elements supposedly necessary

to establish an omission claim under GBL 349 is based on a blatant misreading of Plaintiffs'

Amended Complaint, and the Court should give it short shrift.[14]

---

[14] Because Mr. Berkson alleges a misrepresentation claim, not an omission claim, Gogo's cite to
*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, N.A., 85 N.Y.2d 20, 26

**Second**, Gogo assumes the conclusion that Mr. Berkson saw and agreed to Gogo's Terms of Use in connection with his September 25, 2012, transaction (Def. Mem. at 23 ("[T]he Terms of Use to which Berkson expressly agreed when subscribing to Gogo's service on September 25, 2012 . . . control the outcome here.")), in direct contradiction to the allegations in the Amended Complaint.  Indeed, Mr. Berkson alleges that Gogo's site had "representations about the monthly cost of the service but had **no representations** about the recurring nature of charges for the service."  (¶ 23 (emphasis added).)  Even if the Terms of Use were buried somewhere on Gogo's registration website, Mr. Berkson made his purchase based on an affirmative representation indicating he would only be charged once.  (¶ 7.)  Mr. Berkson should not be expected to look beyond an easily-accessible affirmative misrepresentation to find the truth buried in the pages of Gogo's website.  *See Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG), 2010 WL 2925955, at *16 (E.D.N.Y. July 21, 2010) ("Reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." (citing and quoting *Williams v. Gerber Products Co.*, 552 F.3d 934, 939 (9th Cir. 2008)).  On this Rule 12(b)(6) motion, the Court should not accept Gogo's contention that it disclosed the recurring charges to Mr. Berkson, a contention which runs counter to the well-pled allegations in the Amended Complaint.

**Third**, Gogo argues Mr. Berkson's allegations fail to establish that the registration website was misleading, due to the presence of the Terms of Use on the site.  (Def. Mem. at 24 (citing *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013).)  However, although "the presence of a disclaimer or other clarifying language *may* defeat a claim of deception," the existence of clarifying language does not defeat a claim of deception in every circumstance.

---

(1995), on page 23 of its Motion fails.

*Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, No. 13-CV-3073 NSR, 2014 WL 1285137, at *8–9 (S.D.N.Y. Mar. 27, 2014) (internal citation and quotation marks omitted) (emphasis in original) (denying motion to dismiss GBL 349 claim).  Here, Gogo's buried Terms of Use failed to apprise Mr. Berkson of the recurring charges.

**Fourth**, Gogo asks the Court to consider facts that Plaintiffs' Amended Complaint does not provide, *e.g.*, that Mr. Berkson could not have subscribed to Gogo's service without actively acknowledging that he agreed to the Terms of Use then in effect.  (Def. Mem. at 24.)  The Court, however, should decline to convert Gogo's 12(b)(6) motion into a motion for summary judgment without providing the parties an opportunity to conduct discovery.

In resolving a motion to dismiss under Rule 12(b)(6), "the Court is confined to the allegations contained within the four corners of [the] complaint." *Woolcott v. Baratta*, No. 13-CV-2964 JS GRB, 2014 WL 1814130, at *3 (E.D.N.Y. May 7, 2014) (internal citation and quotation marks omitted).  "[I]t is improper for a court to consider declarations and affidavits on a motion to dismiss."  *Id.*, 2014 WL 1814130, at *6 (internal citation and quotation marks omitted).  If the defendant attaches such extraneous material to its motion to dismiss, the Court "may, at its discretion, exclude the extraneous material and construe the motion as one under Rule 12(b)(6)," especially if the motion to dismiss asks the Court to resolve a factual dispute. *Id.*, 2014 WL 1814130, at *6 n.7 (internal citation and quotation marks omitted).  The Court should decline to consider the extraneous factual material in Gogo's declarations on its 12(b)(6) motion, since it falls outside of the four corners of the Amended Complaint, and the Court should grant Plaintiffs the opportunity to conduct discovery on these factual issues.[15]

---

[15] *Rapoport v. Asia Electronics Holding Co., Inc.*, 88 F. Supp. 2d 179 (S.D.N.Y. 2000), which Gogo cites on page 23 of its Motion, is inapposite.  In that case, the plaintiffs' amended complaint explicitly relied upon two documents, a *Washington Post* article and a registration

*Finally*, Gogo's argument that Berkson lacks an injury (Def. Mem. at 24) is wrong.  If Mr. Berkson ultimately proves his claim, he will be entitled to receive statutory damages of at least $50 per violation (*i.e.*, per month for three months).  N.Y. Gen. Bus. Law § 349(h) ("[A]ny person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions.").  Thus, even if American Express reversed Mr. Berkson's charges, that reimbursement did not make him fully whole for purposes of his GBL 349 claim.

## D.   Defendants' Arguments in Favor of Dismissal of Plaintiffs' Claims Against Gogo Inc. Are Meritless

Gogo argues that, in asserting their claims, Plaintiffs "fail to distinguish and identify the party with whom Plaintiffs contracted for the purchase of in-flight Internet service."  (Def. Mem. at 25.)  Plaintiffs' claims, however, aside from their claim for breach of the implied covenant of good faith and fair dealing, are claims of consumer fraud, false advertising, and unjust enrichment.  (¶¶ 42–70, 77–93.)  Aside from their claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs do not assert claims of a contractual nature.

Furthermore, Plaintiffs assert that Gogo Inc. is the parent corporation of Gogo LLC and that, according to Gogo Inc.'s S-1 form filed with the United States Securities and Exchange Commission on December 23, 2011,[16] *Gogo Inc.* (and its directly and indirectly owned subsidiaries "as a combined entity") offers "a full suite of in-flight internet connectivity and other voice and data communications products and services . . . Gogo is the world's leading

---

statement / prospectus.  *Rapaport*, 88 F. Supp. 2d at 179, 181–82, 184.  Despite this, the plaintiffs attached neither document to the amended complaint.  *Id.* at 184.  The court held that it nonetheless "must carefully consider both of [the] documents, as they form the basis of the claim."  *Id.*  By contrast, here, Gogo's Terms of Use do not form the basis of any of Mr. Berkson's claims.

[16] Gogo Inc., Registration Statement (Form S-1), at 1 (Dec. 23, 2011), *available at* http://www.sec.gov/Archives/edgar/data/1537054/000119312511351260/d267959ds1.htm.

provider of in-flight connectivity . . . ."  (¶ 17.)  Thus, Gogo Inc.'s S-1 strongly suggests that Gogo Inc. is at least partly, if not entirely, responsible for representations made in connection with Gogo's in-flight Internet services.  By naming Gogo LLC and Gogo Inc. together throughout the Amended Complaint, Plaintiffs assert that both entities are responsible for the alleged fraud on consumers and false advertising in connection with Gogo's in-flight Internet services.  Consequently, Gogo's contractual arguments based on the Terms of Use miss the mark, and the Court should deny Gogo's motion to dismiss Gogo Inc. from the action.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion in its entirety.


Date: June 12, 2014                          Respectfully submitted,

   */s/ Michael R. Reese*
Michael R. Reese
*mreese@reeserichman.com*
Kim E. Richman
*krichman@reeserichman.com*
George V. Grande
*ggrande@reeserichman.com*
REESE RICHMAN LLP
875 Avenue of the Americas, 18th Floor
New York, New York  10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

*Counsel for Plaintiffs and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 12, 2014, I caused the foregoing document and its accompanying Declarations of George Granade, Adam Berkson, and Kerry Welsh to be electronically filed via the Court's CM/ECF system, which caused electronic copies to be served on all counsel of record.

*/s/ Michael R. Reese*
Michael R. Reese
